**BULOVA WATCH CO., Inc., v. STOLZBERG.**

**Civ. A. No. 5427.**

District Court, D. Massachusetts.

Jan. 3, 1947.

544

Robert H. Davison, Stuart MacMillan and Haussermann, Davison & Shattuck, all of Boston, Mass., for plaintiff.

Nathan Tobin and Tobin & Tobin, all of Lynn, Mass., and Alfred Sigel, of Boston, Mass., for defendant.

SWEENEY, District Judge.

In this action the plaintiff seeks to have the defendant enjoined from use of its registered trade-mark, which the plaintiff says the defendant is using in such a manner as to constitute unfair competition. It is to be noted at the outset that this Court has jurisdiction on two grounds; first, because of the diversity of the citizenship of the parties and, second, because it is a trade-mark action with a pendent count for unfair competition.

### Findings of Fact.

Plaintiff is a New York corporation, while defendant is a Massachusetts resident doing business under the name "Eddy's Shoes". The Bulova Watch Company was founded in 1875 by Joseph Bulova who originally manufactured and dealt in all kinds of jewelry. In 1911 the company was incorporated under the name J. Bulova Company, and it gradually concentrated on the manufacturing of watch cases and watch movements. About 1923 the corporate name was changed to the Bulova Watch Company. The plaintiff has continued to concentrate on the watch business, except for a period during the 1920's when it manufactured radios. During the war years its products were sold almost exclusively to the United States Government. These included time fuses, clocks, altimeters, rate of climb, hack watches, etc.

On January 26, 1927, plaintiff registered the trade-mark "Bulova" under the 1905 Act, 15 U.S.C.A. § 81 et seq., for watches, watch movements and watch cases. Defendent does not contest the validity of the registration on the ground of non-exclusive use during the 10 year period under the statute. According to the testimony of

plaintiff's vice-president, Bulova is a family name but he knows of no other family with the same name in the United States. This was not controverted by the defendant.

Plaintiff sells its products through some 8,000 retail jewelers throughout the country, as well as through department stores and mail order houses. The plaintiff has continuously used the name "Bulova" in connection with its products and in its advertising. Factories are maintained at Waltham, Massachusetts, and Providence Rhode Island, in addition to the factories in other states. Extensive advertising has been carried on by the plaintiff, either alone or in association with local dealers, in newspapers, national magazines, by direct mail and over some 250 radio stations. The advertising budget has run from one million to three million dollars yearly. Plaintiff sells through some 210 authorized dealers in the New England area, including stores in Waltham and Quincy, Massachusetts, and Providence, Rhode Island.

Defendant registered his trade-mark, "Bulova", on shoes in June, 1941. He conducts a shoe business under the name of "Eddy's Shoes" with stores in Providence, Waltham and Quincy. His shoes were selling in 1944 in the price range from $4.95 to $5.95. He began using the trade-mark "Bulova" in 1940, stamping the shoes "Bulova Fine Shoes" and featuring the word "Bulova" in his advertising. He knew of the existence of the "Bulova" name in connection with watches. There has never been anyone with the name "Bulova" connected in any capacity with the defendant's business. The defendant could assign no reason for his choice of the word "Bulova", and I can only find that he chose it because it was a widely advertised and well known name in the field of trade.

In April, 1944 defendant received a letter from plaintiff's attorneys with reference to the use of the name "Bulova" on defendant's shoes. Defendant then stopped using the name. However, he had a stock on hand of some 2,000 shoes on which the name "Bulova" was stamped. The plaintiff agreed to permit the defendant to dispose of this stock in return for his commitment to discontinue the use of the name. Plain-

tiff further agreed not to institute any legal proceedings at that time. Subsequently, however, when a stipulation was prepared, defendant refused to sign it on the ground that it included a provision for cancellation of his registered trade-mark. From the evidence I cannot find that the defendant has entirely refrained from using the name. In the prayers for relief plaintiff asks for an injunction, the destruction of all materials containing the name "Bulova", damages, and an order for the cancellation of defendant's registered trade-mark.

The first question for consideration is whether or not there has been any trade-mark infringement under the 1905 Act. No contention is made by the defendant with reference to the invalidity of plaintiff's registered mark, and since registration is prima facie evidence of ownership the plaintiff is entitled to the benefits of the 1905 Act. Section 16 of the Act, 15 U.S. C.A. § 96, protects a federally registered trade-mark against its use on goods "of substantially the same descriptive properties" as those set forth in the registration. Watches are in class No. 27, while shoes are in class No. 39. Whether it is held that the concept of "descriptive properties" is tied in with class, Beech-Nut Packing Co. v. P. Lorillard Co., 3 Cir., 7 F.2d 967, or that descriptive properties is broader than class, L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, it seems clear, under the doctrine of these cases, that watches and shoes do not possess "substantially the same descriptive properties" and hence there is no trade-mark infringement under the 1905 Act.

Although the count for trade-mark infringement cannot be sustained, the plaintiff has nevertheless established a not "plainly unsubstantial" claim for relief under the 1905 Act. The count for unfair competition in the complaint is predicated essentially on the same facts upon which the claim of trade-mark infringement was based. This Court, therefore, has jurisdiction of the count in unfair competition which is pendent to the claim for infringement of a federally registered trade-mark. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148: Armstrong Paint & Varnish

Works v. Nu-Enamel Corp., 305 U.S. 315, 324, 325, 59 S.Ct. 356, 83 L.Ed. 437. This is a derivative jurisdiction and exists independently of any diversity of citizenship basis.

We are now met squarely with the question whether under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we are bound to follow the Massachusetts law of unfair competition, or, already having jurisdiction on a basis other than diversity, are we free to depart from the Massachusetts law and apply what seems to this Court to be a much more just solution of this particular case? There is much authority to the effect that we are bound by the Massachusetts law. Time, Inc. v. Viobin Corporation, 7 Cir., 128 F.2d 860; National Fruit Product Co. v. Dwinell-Wright Co., D. C., 47 F.Supp. 499, 502-504; Folmer Graflex Corporation v. Graphic Photo Service, D. C., 44 F.Supp. 429. My own decision in Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., D. C., 55 F.Supp. 308, followed this general rule although the question was not raised in the case. On more careful consideration, I feel that there is a strong policy in favor of interstate uniformity in the field of unfair competition. There is the dilemma between a checker-board result in the automatic application of Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, to multi-state unfair competition on the one hand, or a return, on the other, to the evils of choice of forum if local law is to govern the interstate as well as local aspects of the tort. See S. S. Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trade-Marks and Unfair Competition, 42 Columbia Law Review 955; S. S. Zlinkoff. Some Reactions to the opinion of Judge Wyzanski in National Fruit Product Co. v. Dwinell-Wright Co., D. C., 47 F.Supp. 499, 32 Trade-Mark Rep. 131, December 1942.

■ It appears that federal law governs on the question of infringement of a registered trade-mark. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618, 620. This Court has jurisdiction because of the interrelationship of the issues of unfair competition with those raised under the Trade-Mark Act. Federal law should govern both aspects of the complaint, while the local law of unfair competition is restricted to those cases where federal jurisdiction is sustainable only on diversity.

■ This brings us to the problem whether under broad principles of unfair competition the plaintiff is entitled to protection. The older cases in this field denied protection unless there was confusion on the part of the purchasing public as to the source of the goods and a resulting diversion of custom from the plaintiff. In the "unfair competition." formula the existence of competition was vital.

Gradually, however, the cases have come to recognize that it is the "unfairness" of the defendant's conduct rather than the existence of "competition" between plaintiff and defendant which forms the basis for the intervention of a court of equity. The trade-mark not only serves to designate the source of the owner's products, but also stands as a symbol of his good will and hence is an instrument for the creation and retention of custom. Schechter, F. I., The Rational Basis of Trade-Mark Protection, 40 Harvard Law Review 813. Where the mark is strong, i. e., unique or fanciful, the courts have been more prone to grant protection from use on non-competing goods.

There is the line of cases which develops the doctrine that equity will protect the plaintiff from the use of the mark on non-competing, but related goods. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.,1918C, 1039. In Eastman Photo Materials Co. v. Griffiths Cycle Corp., 15 R.P.C. 105, "Kodak" on cameras won an injunction against the same mark on bicycles, with some emphasis on the fact that both products were frequently carried by the same stores. In Wall v. Rolls-Royce of America, Inc., 3 Cir., 4 F.2d 333, "Rolls Royce" on automobiles was enough to enjoin its use on radio tubes. The use of electricity in both products was seized upon to establish a relationship.

In Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974, involving locks and flashlights, Judge Learned Hand wrote the words which express the philosophy of broad trade-mark protection: "However,

it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

The limits of this view were laid down by Judge Hand in L. E. Waterman & Co. v. Gordon, supra, where it was emphasized that the doctrine of non-competing goods should not be extended to cases where the relationship is too remote, e. g., steam shovels and lipsticks. In that case plaintiff had used the name Waterman continuously on fountain pens for some fifty years when the defendant, Gordon, sold razor blades as "Waterman" blades. A decree for the plaintiff was affirmed on the ground that protection should be given against the use of the trade-mark on goods which might naturally be supposed to come from him.

Whatever the distinctions on which the decisions are rested, running through them all is a basic notion of "unfairness". Where the plaintiff has a fanciful or strong mark, built by long use and much expense, he has a substantial interest in his good will. A use by the defendant, even on non-competing goods, may result in injury to the plaintiff's reputation and dilute the quality of the trade-mark. If the relationship in the products is not too remote under the Waterman rule protection should be given.

In the instant case the trade-mark "Bulova" is not fanciful but its use for over fifty years without interruption is sufficient to rely on the Waterman case, particularly since Bulova is a unique family name and the defendant claims no association with anyone named Bulova. Watches and shoes, while non-competing, are not so remote as to foreclose the possibility that they come from the same source. Defendant, by using the trade-mark on low price shoes, stands to injure plaintiff's reputation and dilute the quality of his trade-mark. Defendant has little cause to complain since he has been riding the coattails of the plaintiff's good will, and he had available to him a wide range of choice to name his products.

### Conclusions of Law.

In the light of the foregoing I conclude and rule that defendant, while not an infringer under the Trade-Mark Act, is nevertheless to be enjoined from the use of the plaintiff's common law trade-mark "Bulova" in connection with the sale of shoes. Plaintiff's other prayers for relief are denied.