The DOBECKMUN COMPANY

v.

BOSTON PACKAGING MA-
CHINERY CO.

Civ. A. No. 54-944.

United States District Court
D. Massachusetts.

Dec. 2, 1955.

As Modified on Rehearing
May 1, 1956.

Charles S. Grover, Boston, Mass., Albert L. Ely, Jr., Cleveland, Ohio, for plaintiff.

James C. Henes, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is a suit for an injunction [1] under the Lanham Act, 15 U.S.C.A. § 1051 et seq., and Mass.Gen.Laws (Ter.Ed.) Ch. 110, § 7A, as added by St.1947, c. 307. The plaintiff is an Ohio manufacturer of cellophane products, notably an opening tape hereinafter described. The tape is sold in interstate commerce in Massachusetts. The defendant is a local manufacturer of packaging machinery. Jurisdiction is asserted under 15 U.S.C.A. § 1121 and 28 U.S.C. §§ 1332 and 1338. I find all jurisdictional requisites.

Since 1937 the plaintiff has been manufacturing a narrow laminated cellophane tape, generically called tear tape. In 1940 it adopted the name Zip-Tape, for which it obtained a registered trademark, No. 379,629. In its application the independent use of the word tape was disclaimed. The appearance of plaintiff's product is familiar to most users of cigarettes as the red opening tape on the package. Plaintiff has no monopoly, and manufactures something less than half of this product sold throughout the country. By adopting the name Zip-Tape it has sought to identify tape manufactured by it, but once it is removed from the labelled spool on which it is marketed, it is indistinguishable from that made by others. Plaintiff claims, however, and I find for the purposes of this decision, that its tape is peculiarly well manufactured and packaged, and that this is a matter of importance.

---

1. Plaintiff also asked damages, but failed to prove any.

The defendant manufactures a machine for packaging loose material, such as potato chips, in cellophane bags, called the Govatsos Zip-Corder, but known as a Zip-Corder. The machine incorporates in each package a piece of opening tear string, known as the zipcord. Any commercial thread string can be used, and defendant does not concern itself with supplying it.

A bag closed by defendant's machine can be opened at the lips by the cord without injury to the bag. While tear tape is sometimes sold for use in packaging bags, it does not have this advantage. Plaintiff's product is appropriate for bags that are discarded, or at least no longer fully used as a bag, as soon as opened; defendant's product is for bags given further whole use. On the other hand, a tear cord is not at all practical on a rectangular solid such as a cigarette package. Packaging machinery adapted for tape cannot be used with a cord, and defendant's machine cannot use tape.

I find there is no confusion, or likelihood of any confusion, in the minds of customers or prospective customers as to the source of either plaintiff's tape or defendant's machine. In particular I do not believe anyone is likely to purchase defendant's machine thinking it had the same origin as plaintiff's tape. There is no direct competition between plaintiff and defendant. To the extent that there is any competition it is between defendant and the manufacturers of packaging machines that use plaintiff's tape, which would, of course, have an indirect effect on plaintiff. Even apart from the relatively small amount of business done by defendant I find this competition negligible. And, as stated, it does not involve passing off. I do not find the defendant guilty of bad faith.

■■ The first question is whether plaintiff's registered trademark is valid.

Defendant says it is not because the term Zip is generic and purely descriptive. While zip is a common word I do not find it has any definite isolated meaning. It is highly suggestive, but that is not enough. Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 206 F.2d 144, certiorari denied 346 U.S. 867, 74 S.Ct. 106, 98 L. Ed. 377; W. G. Reardon Laboratories v. B. & B. Exterminators, 4 Cir., 71 F.2d 515; cf. Charles of the Ritz v. Elizabeth Arden Sales Corp., 161 F.2d 234, 34 C.C. P.A., Patents, 1029. (See also note 2, infra). I hold the registered trademark valid. However, I hold it not infringed. The word zip is too common a word for the plaintiff to be able to appropriate it to an unnecessary extent. One can never be sure of the limits of judicial notice, but at least since the World War I song, "Good Morning, Mr. Zip, Zip, Zip," I think zip has been commonly known as connoting movement, speed and dash. The zipper; Zippo, the snap-opening cigarette lighter; even Zip, the depilatory, are or were well-known examples of such application to merchandise. Others were mentioned in the testimony.[2] A pertinent example of current use is a nationally advertised washing powder, Tide, which boasts a "zip-opening" package.

In the light of the facts hereinbefore found, and those hereafter found to the extent material, I hold that plaintiff cannot pre-empt the word zip altogether from other uses, and that apart from the possible question of dilution defendant's use falls within permissible bounds. Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 183 F.2d 355; Brown & Bigelow v. Eugene Dietzgen Co., C.C.P.A., 203 F.2d 764, 40 C.C.P.A., Patents, 901; Perfection Co. v. Coe, D.C.D.C., 64 F.Supp. 942.

The matter of dilution requires further findings. Although plaintiff has from time to time advertised in national

2. In addition to the three just designated, zip combinations which have been favorably passed on include the following: Zip-Knick, Zip-Midy, Zip-Over, (B. F. Goodrich Co. v. Kenilworth Mfg. Co., 40 F.2d 121, 124, 125, 17 C.C.P.A., Patents, 1105, 1110, 1112) and Zip-Shave, (Jean Jordeau, Inc., v. Pal Blade Co., D.C.S.D.N.Y., 92 F.Supp. 167). But cf. Zip-On (B. F. Goodrich Co. v. Hockmeyer, 40 F.2d 99, 17 C.C.P.A., Patents, 1068).

magazines of general circulation, I find that so far as the general public is concerned plaintiff's purpose was merely to create a demand for tear tape. The public at large has little, if any, knowledge of the name Zip-Tape. Plaintiff's primary object in this advertising was to foster public demand for tear-tape-opening packages as such, thereby inducing extensions in their use, with resultant benefits to plaintiff as a supplier of 45–50% of the market.[3] Plaintiff also advertises in trade magazines. The persons among whom its name is known are the manufacturers and users of packaging machines. So far as the manufacturers are concerned, except as a matter of friendly relations, plaintiff's trademark is of no particular significance. The manufacturers neither buy nor supply tape, and the tape attachments which they furnish for their machines are adapted for tear tape generally and not specifically for the plaintiff's.

Nor is it clear how much importance the users of packaging machinery attach to plaintiff's name. I am content to assume that plaintiff's trademark is known in the trade, but I find that it is principally known only by plaintiff's customers,[4] who became and remain such by virtue of their knowledge of plaintiff's reputation and not as a result of the mark. I believe even they have no great interest in the mark, but use it as a simple convenience, or out of courtesy to the plaintiff, and that the mark does little to attract their business, or hold it. However, I do find that plaintiff's trademark has some value.

Plaintiff claims that the defendant is diluting its property rights. I do not find here the possibility of confusion which is normally required under the Lanham and the 1905 Acts. It is not clear how far the Massachusetts statute goes beyond this.[5] Cf. 265 Tremont Street, Inc., v. Hamilburg, 321 Mass. 353, 357, 73 N.E.2d 828. Even the broadest common law protection, in the absence of confusion, is only against the assimilation of some portion of plaintiff's reputation. Cf. Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972; Bulova Watch Co. v. Stolzberg, D.C.D.Mass., 69 F.Supp. 543. Here, partly because plaintiff's mark has little appropriable reputation, but also because of defendant's different name, and other factors, I find that no reputation was transferred.

Plaintiff's claim of dilution is based upon other grounds. I find in this regard that the sale of Zip-Corders, with the consequent application of the word zip-cord to the tear string, may tend to lead to the application of the word zip to all tear tape, and hence, to some extent, in this manner threatens injury to the individuality of plaintiff's trademark.[6] It does not follow that defendant's conduct is actionable. I might not be averse to extending protection against this sort of dilution in the case of a fanciful or "strong" mark whose character was solely or primarily due to the owner's endeavors.[7] However, it is another thing to extend it to a mark which is hyper-suggestive and by its own nature highly fragile, if not autophagous. In this connection I think it significant that the largest national manufacturer of packaging machinery advertises its machines as applying "tear tape" in such manner as to give the "product a wrap that zips open neatly." The plaintiff introduced this exhibit, and gave no indication that it had complained of this language. Nor do I believe it could.

---

3. If this was not the object, for reasons expressed in Esquire, Inc. v. Esquire Slipper Mfg. Co., D.C.D.Mass., 139 F.Supp. 228, n. 10, I believe it was the natural effect.

4. R. 35. See, also correspondence indicating that even after 14 years one of the largest national packaging trade papers apparently did not know of it.

5. But cf. Esquire, Inc., v. Esquire Slipper Mfg. Co., supra, note 3.

6. Defendant itself, before the receipt of complaint from the plaintiff, has referred publicly to tear tape generally as zip-tape. I would enjoin such conduct if I thought there were likelihood of its repetition.

7. Cf. Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347; Bulova Watch Co. v. Stolzberg, supra.

■ Where dilution of the sort here objected to is inherent in the nature of the mark because of the suggestive meaning of a component word, I will not hold that a nonconfusing and otherwise proper use of that word in a different mark can be enjoined simply because it may increase plaintiff's instability. Cf. Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 1 Cir., 165 F.2d 549. If a party chooses an unstable mark, he must accept the consequences.

This ruling makes it unnecessary to consider whether the Massachusetts statute applies, or could lawfully apply, to a federally registered trademark itself, or applies only to common law rights, and if, as I assume, only to the latter,[7] whether plaintiff has proved any established or secondary meaning within the Commonwealth.[8] If it has I would still find and rule that there has been no actionable dilution.

The complaint will be dismissed, with costs.

---

7. Cf. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618; Time, Inc., v. T. I. M. E. Inc., D.C.S.D. Cal., 123 F.Supp. 446.

8. Cf. Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177.