PIGNONS S. A. de MECANIQUE de PRECISION, et al., Plaintiffs, Appellants,

v.

POLAROID CORPORATION, et al., Defendants, Appellees.

No. 80-1744.

United States Court of Appeals, First Circuit.

Argued April 10, 1981.

Decided Aug. 11, 1981.

---

Richard J. Birch, Boston, Mass., with whom Thompson, Birch, Gauthier & Samuels, Boston, Mass., was on brief, for appellants.

Herbert F. Schwartz, New York City, with whom William K. Kerr, Patricia A. Martone, Fish & Neave, New York City, Laurence S. Fordham, William J. Cheeseman, and Foley, Hoag & Eliot, Boston, Mass., were on brief, for appellees.

Before ALDRICH, CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This suit raises the question whether use of the Greek letter word "Alpha" in the designation of a series of Polaroid cameras infringed or diluted the trademark "Alpa" (after the mountains) owned by a Swiss camera maker, or otherwise constituted unfair competition.

## I. *Background*

Pignons is a Swiss corporation that has long supplied high-tolerance, precision mechanical components to the Swiss watch industry. In the early 1930's Pignons began manufacturing photographic equipment and since 1949 has marketed in the United States various models of 35 millimeter, single lens reflex cameras and corresponding lines of lenses and photographic accessories, all under the registered trademark "Alpa." Pignons obtained federal trademark registration for its mark in 1948 in connection with "photographic apparatus and accessories—namely, lenses, filters, sunshades, cable releases, self-timers, tripods, viewers, and film cartridges." This registration was renewed in 1968. A separate federal registration for the mark "Alpa" was granted in 1978 in connection with cameras. A Massachusetts trademark registration for the mark "Alpa" was granted in 1977. From 1953 to 1976, Pignons' Alpa cameras were distributed in the United States by Karl Heitz, Inc. T.A.G.

Photographic, Inc. became the exclusive distributor of Alpa cameras in 1976.

Polaroid Corporation is an American enterprise that since 1948 has manufactured and sold "instant" cameras, that is, cameras capable of producing a fully developed photograph moments after a picture is taken. In 1972, Polaroid introduced a new type of instant camera, known as the Polaroid SX-70 Land Camera, which could produce a finished picture without the need for peeling or stripping away waste material. The present litigation was triggered by Polaroid's introduction of several new versions of its SX-70 Land Camera in the late summer and fall of 1976. All bore the name "Alpha":

Polaroid SX-70 Land Camera Alpha 1;
Polaroid SX-70 Land Camera Alpha 1 SE;
Polaroid SX-70 Alpha Executive Land Camera;
Polaroid SX-70 Land Camera Alpha Sears Special.

Polaroid advertised and distributed all of these various models except the Polaroid SX-70 Land Camera Alpha Sears Special, which was marketed by Sears, Roebuck and Company.[1]

On February 9, 1977, Pignons and T.A.G. filed a four-count complaint in federal district court, 498 F.Supp. 805, stating that use of the mark "Alpha" by Polaroid and Sears infringed upon the trademark "Alpa" in violation of federal and state trademark laws, 15 U.S.C. § 1114(1) and Mass.Gen. Laws Ann. c. 110B, § 11; constituted unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and diluted the distinctive quality of the mark "Alpa" in violation of Mass.Gen.Laws Ann. c. 110B, § 12. The complaint sought injunctive relief and damages. Polaroid and Sears answered on April 6, 1977, denying any wrongful conduct, and discovery began. (We will hereafter refer to the parties collectively as Pignons and Polaroid.)

Approximately three years later, on March 26, 1980, Pignons requested leave to file a supplemental complaint which, for the most part, updated and expanded upon allegations in the original complaint. One of the four counts in the supplemental complaint added a new claim of federal trademark infringement based upon the federal registration Pignons had obtained in 1978 for use of the mark "Alpa" in connection with cameras. Another count added to the unfair competition claim in the original complaint new allegations that in its advertisements Polaroid had manipulated the color of photographs taken with SX-70 cameras so as to deceive consumers about the quality of pictures obtainable with Polaroid instant cameras.

On August 12, 1980, before the court had ruled on Pignons' request for leave to file its supplemental complaint, Polaroid moved for summary judgment. Ten days later the parties submitted various pretrial documents, among them a stipulation of facts, a statement of issues, and a list of witnesses and exhibits. At the same time, in connection with the unfair competition claim, Pignons asked that Polaroid be compelled to answer certain interrogatories and requests for admissions relating to SX-70 film and the quality of its color reproduction.

On August 29, Pignons was given leave to file its supplemental complaint. The same day, it filed a memorandum opposing Polaroid's motion for summary judgment and requesting that summary judgment be granted in its favor. It further asked that Polaroid be compelled to answer the supplemental complaint.

Oral argument on the summary judgment motions took place on September 8, and the district court issued its memorandum and order on October 7. (The court did not rule on Pignons' request that Polaroid be compelled to answer the supplemental complaint and respond to related interrogatories.) In a lengthy discussion, the district court disposed of Pignons' federal and state trademark infringement claims, as well as its claim of unfair competition, on a single ground. Based on the parties' submissions,

---

1. Polaroid also introduced another model called the "Polaroid SX-70 Land Camera Alpha BC–K Mart," which was distributed by a company not a party to this suit.

the court saw no possibility that Pignons could prove an element essential to each of those claims—that Polaroid's use of "Alpha" was "likely to confuse consumers about either the source of their goods, or a possible relationship between their respective business concerns." As for Pignons' claim of trademark dilution in violation of Massachusetts law, the court ruled that Pignons' mark "Alpa" was insufficiently distinctive to warrant relief. Summary judgment was granted in favor of the defendants on all counts. Pignons' original and supplemental complaints were dismissed.

Pignons now appeals, arguing that summary judgment was improper because its pleadings, depositions and affidavits raised genuine issues of material fact for purposes of Fed.R.Civ.P. 56. It further contends that the district court misinterpreted the required elements of an unfair competition claim under section 43(a) of the Lanham Act, 11 U.S.C. § 1125(a).

## II. *The Standard for Summary Judgment*

■ While summary disposition is usually inappropriate in complex infringement and unfair competition cases, it is not unheard of. *See, e. g., B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir.), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970); *Beef/Eater Restaurants, Inc. v. James Burroughs Ltd.*, 398 F.2d 637 (5th Cir. 1968); *Westward Coach Manufacturing Co. v. Ford Motor Co.*, 388 F.2d 627 (7th Cir.), *cert. denied*, 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968). The question is whether summary judgment was appropriate here. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is material if it "affects the outcome of the litigation," and genuine if manifested by "substantial" evidence "going beyond the allegations of the complaint." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975),

*cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). In passing on a summary judgment motion, the court must view the record and draw inferences most favorably to the opposing party. *Hahn*, 523 F.2d at 464.

## III. *State and Federal Trademark Infringement*

■ Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), provides that,

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

\* \* \* \* \* \*

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

In substantially similar form, Mass.Gen. Laws Ann. c. 110B, § 11 declares that,

any person who shall:

(a) use, without consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services;

\* \* \* \* \* \*

shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in section thirteen, except that under this section the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive.

Likelihood of confusion is thus an essential element of a claim of trademark infringe-

ment, whether asserted under Massachusetts or federal law, *see Coca-Cola Co. v. Snow Crest Beverages, Inc.*, 162 F.2d 280, 283 (1st Cir.), *cert. denied*, 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947); 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies § 80 (3d ed. 1969). Viewing the pleadings, depositions, answers to interrogatories, admissions and affidavits in the light most favorable to Pignons, the district court concluded they were incapable of establishing that Polaroid's use of the mark "Alpha" would cause confusion among prospective purchasers with respect to Pignons' Alpa cameras.

■ In assessing likelihood of confusion, courts have commonly looked to the following factors: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark. *See Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440 (9th Cir. 1980); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *DeCosta v. CBS, Inc.*, 520 F.2d 499 (1st Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). We now examine the evidence favorable to Pignons as it applies to each of these factors:

■ (1) *The similarity of the marks.* In spelling and pronunciation, Polaroid's mark differs from Pignons' only by virtue of the letter "h". Marks less closely related in appearance and sound have been held to be confusingly similar. *See* 3 Callman, *supra*, § 82.1(a)(2), (3), at 609–19. But as the district court correctly observed, "similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *See Alpha Industries*, 616 F.2d at 444; *Amstar Corp.*, 615 F.2d at 260–61; *Snow Crest Beverages*, 162 F.2d at 283–84. In the present case, the total effect of Polaroid's designation of its SX-70 Alpha cameras minimizes, if it does

not eliminate, the possibility that Polaroid's mark might be confused with Pignons'. On the cameras themselves, and in Polaroid's advertising, the word "Alpha" always appears in close proximity with an equally prominent and uniquely identifying designation, such as "Polaroid SX-70 Land Camera Alpha 1," "Polaroid SX-70 Alpha Executive Land Camera," or "Polaroid SX-70 Land Camera Alpha Sears Special." Further, the packaging of Polaroid and Pignons cameras differs substantially. The parties have not questioned the district court's observation that,

> the vast majority of Pignons' cameras are packaged in red and white boxes featuring the word "Swiss" or "Switzerland," a white cross on a red background and the logo of a mountain. By contrast, Polaroid's boxes are white, black or silver, and all bear a distinctive multicolored geometric design which is a federally registered trademark.

We and other courts have indicated that in certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer. *See Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 194–95 (1st Cir. 1980); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 378–79 (1st Cir. 1980); *Alpha Industries*, 616 F.2d at 444; *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir. 1972); *R. G. Barry Corp. v. A. Sandler Co.*, 406 F.2d 114, 116 (1st Cir. 1969) (finding conjunction of housemark with contested trademark to be of "exceptional significance").

(2) *The similarity of the goods.* Both the products in this case are single lens reflex cameras; otherwise they have little in common.

Their appearances are strikingly different—so much so that one could not be mistaken for the other. In significant ways, their functional characteristics are equally distinct. Polaroid's SX-70 Alpha Land cameras are "instant" cameras that produce a fully developed photograph moments after a picture is taken. They can be collapsed

into a flat rectangle that fits in a pocket. Pignons' Alpa cameras have neither of these characteristics. On the other hand, Pignons' cameras can be fitted with a variety of different lenses, while Polaroid's SX-70 Alpha Land cameras come equipped with a standard, nondetachable lens.

In addition, Pignons' cameras are substantially more expensive than Polaroid's. During the years 1976–1978, the list prices of Pignons' Alpa cameras ranged from $550 for the least expensive to $1,395 for the most expensive. By contrast, the suggested retail prices of Polaroid's SX-70 Alpha cameras in 1976–1977 ranged from $139.99 for the SX-70 Land Camera Alpha Sears Special, to $188 for the SX-70 Alpha Executive Land Camera, to $233 for an SX-70 Land Camera Alpha 1. The lowest market price cited by Pignons for one of its own cameras was $229.95, and for one of Polaroid's, $132.50.

(3) *The relationship between Pignons' and Polaroid's channels of trade.*

(4) *The relationship between the parties' advertising.*

(5) *The classes of prospective purchasers.*

As these factors are interrelated in this situation, we treat them together. Alpa cameras have been marketed in the United States through a series of exclusive distributorships which, in turn, sell to the public exclusively through a select group of about 125 camera specialty stores. Very few Pignons cameras are sold in this country. In the years 1965 through 1979, total dollar volume of sales ranged from a low of $30,182.04 (1976) to a high of $721,221.69 (1978). From July 1976 through June 1978, 2,517 Alpa cameras were delivered to the United States; from July 1978 to June 1979, no Alpa cameras were delivered; and from June 1979 through March 1980, only 62 cameras were delivered. Polaroid, by contrast, mass-markets its SX-70 cameras through camera shops, discount stores, drug stores and other retail outlets. Overlap in the parties' channels of distribution can occur only in the approximately 125 camera specialty stores which sell Pignons' Alpa cameras.

Pignons' and Polaroid's advertising, for the most part, is also different. The district court noted that advertising for Alpa cameras "has been restricted to periodic spots in photography magazines." Pignons' promotional materials emphasize the "handcrafted" character of Alpa cameras—their quality and durability. Mention is also made of their versatility, their ability to accept a great variety of lenses, and their suitability for "difficult photography"—picture-taking "in such spheres as natural science, medicine, highly technical hobbies, micro- and macrophotography." One article's implicit description of a prospective purchaser of an Alpa camera was as follows:

> If you appreciate traditional European craftsmanship for its own sake, and are willing to pay for it, then maybe the Alpa is for you. Like all limited-production classics, it has a small, devoted following.

Polaroid's SX-70 Alpha Land cameras are, on the other hand, marketed to appeal to a much broader range of consumers. Though Polaroid sometimes advertises in the same photographic magazines that carry Pignons' ads, it also promotes SX-70 Alpha cameras in magazines with a more general audience—People, Time, Newsweek, Atlantic, Esquire, Money, and U.S. News and World Report—as well as on television. Polaroid's advertisements and brochures emphasize that the SX-70 is a moderately priced instant camera capable of folding into a compact shape. It is characterized as easy to use, convenient to carry and inexpensive:

> Compact. Lightweight. Versatile. Those three words sum up the line of Polaroid cameras for SX-70 pictures. Just as "easy" and "beautiful" sum up reactions to SX-70 pictures and picture-taking.

> \* \* \* \* \* \*

> Three cameras fold to approximately 1 × 4 × 7 inches, yet allow you the greatest focusing range of any camera without a special lens—10.4 inches (for extreme closeups) to infinity (for landscapes). Two are rigid and yet compact enough to

fit in the palm of your hand (they focus from 3 feet to infinity). All are lightweight.

\* \* \* \* \* \*

In short, only Polaroid cameras offer a variety of features that can make instant picture taking easy and fun for just about any pocketbook.

Nevertheless, Polaroid also emphasizes the high quality and sophistication of its products, particularly the top-of-the-line SX-70 Land Camera Alpha 1. The SX-70 is variously touted as "the finest camera Polaroid has ever made" and "the most advanced camera in the world," offering "the ultimate in precise focusing, framing and close-up capabilities." SX-70 cameras purportedly provide "the greatest focusing range of any camera without a special lens" and make use of advanced technology. Seemingly illustrating the suitability of the SX-70 camera for serious photographic work, one Polaroid advertisement juxtaposes a striking picture of a New Guinea aborigine with the statement, "This Polaroid SX-70 photograph by Ansel Adams was exhibited at a major New York gallery." Thus while Polaroid instant cameras are offered to the general public, it can be contended that among the prospective purchasers of the finest Polaroid SX-70 Alpha cameras there would be some who might buy a Pignons Alpa—serious photographers willing to pay a good deal for high-quality, sophisticated photographic equipment. Such customers might purchase a camera in a specialty camera store, the only place where Pignons' and Polaroid's channels of distribution overlap.

It does not follow, however, that having shown this much, Pignons has demonstrated the existence of a genuine issue of material fact with respect to the likelihood of consumer confusion. Those most likely to buy an expensive, sophisticated camera in a specialty camera store are also least likely to be confused by any similarities in Polaroid's and Pignons' marks. Courts have found less likelihood of confusion where goods are expensive and purchased after careful consideration. *See Fisher Stoves*, 626 F.2d at

194; *Alpha Industries*, 616 F.2d at 445; *Kiekhaefer Corp. v. Willys-Overland Motors, Inc.*, 236 F.2d 423, 427–28 (C.C.P.A. 1956); *Magnaflux Corp. v. Sonoflux Corp.*, 231 F.2d 669, 671 (C.C.P.A.1956); *L. J. Mueller Furnace Co. v. United Conditioning Corp.*, 222 F.2d 755, 757–58 (C.C.P.A.1955). Sophisticated consumers may be expected to exercise greater care. *See* 3 Callman, *supra*, § 81.2(a). Taking the undisputed facts most favorable to Pignons, we can see no realistic likelihood that the relevant classes of consumers would be confused by the parties' distribution and advertising of their cameras.

(6) *Evidence of actual confusion.* The record contains evidence, Pignons argues, of actual confusion on the part of some consumers over the relationship between Polaroid Alpha cameras and Pignons Alpa cameras.

First, Pignons points to several registration cards for Alpa cameras and to letters sent to Pignons in which "Alpa" is erroneously spelled "Alpha." On the registration cards in the record, the earliest is from 1959, the most recent from 1973, three years prior to Polaroid's introduction of its SX-70 Alpha Land Cameras. Of the letters, only one (from a Pignons customer in Sydney, Australia) was written after Polaroid introduced its SX-70 Alpha camera. Indeed, only one of the letters in the record appendix came from the United States; it was written in 1975. Beyond demonstrating what is obvious—that "Alpa" is "Alpha" minus an "h"—this evidence demonstrates only that for over 20 years Pignons' trademark has been subject to misspelling. There is nothing in the cards or letters to suggest confusion of products or businesses.

Pignons also cites misspellings of its trademark in advertisements, catalogues, magazines and newspapers, but again these evince not *product* confusion but, at most, that the two words are very close (or, at least, that some people spell badly).

Third, before the district court Pignons claimed to have received a misdirected order for Polaroid SX-70 Alpha cameras. We find no verification for this claim, but in

any event a single misdirected communication is very weak evidence of consumer confusion. *See Alpha Industries*, 616 F.2d at 445; *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978).

Fourth, in a letter submitted to the district court after oral argument on the parties' cross-motions for summary judgment, counsel for Pignons drew the court's attention to a supposed instance of consumer confusion mentioned in the deposition testimony of Stuart Held, the former president of T.A.G. Held's testimony reveals only that having read an article discussing T.A.G.'s involvement in a lawsuit over use of the mark "Alpha," and having been unable to purchase from Sears that company's model of the SX-70 Alpha purportedly because of the suit, a consumer called the president of T.A.G. to see if he "could help him with the situation on an Alpha camera purchase because Sears could not supply him at that point." This incident could not support a reasonable inference of consumer confusion. If anything, the circumstances suggest that the consumer was well aware of the difference between Polaroid's and Pignons' cameras and businesses, but hoped somehow to circumvent Sears' restriction on sales of Alpha cameras.[2]

Finally, Pignons offers a letter from an architectural photographer, Rosemary Kennett, as evidence of actual consumer confusion. Addressed to Karl Heitz, Inc., T.A.G.'s predecessor as Pignons' exclusive distributor in the United States, Kennett's letter notes,

> When I first heard of Polaroid's Alpha, I wondered if they had bought and were distributing your camera. I was surprised that they would market such a dissimilar camera, but assumed they were interested in an additional photo business.

The district court dismissed this evidence as not supporting Pignons' position: "The tenor of the letter, together with the fact that Ms. Kennett knew who to write to about her concerns, suggests that she was not herself confused about either the source or the nature of the defendants' product, but was simply concerned about the potential response of *other* prospective customers." This interpretation, the court concluded, was corroborated by Kennett's deposition testimony.

While we agree with the district court that Kennett's letter and deposition testimony demonstrate a lack of confusion about the difference between SX-70 Alpha cameras and Pignons' Alpa cameras, they arguably tend to show that Polaroid's use of the mark "Alpha" might cause someone to be confused as to the business relationship between Polaroid and Pignons. Confusion over the nature of the parties' business relationship may be as objectionable for purposes of trademark infringement as is confusion between their goods. 3 Callman, *supra*, § 80.2.

But this incident, by itself, seems clearly insufficient. Evidence of actual confusion is not invariably necessary to prove likelihood of confusion; on the other hand, "absent evidence of actual confusion, when the marks have been in the same market, side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion." 3 Callman, *supra*, § 82.3(a), at 849. *See Keebler Co.*, 624 F.2d at 377; *DeCosta*, 520 F.2d at 514. Polaroid introduced its SX-70 Alpha cameras in the fall of 1976 and the motion for summary judgment was not argued and decided until the fall of 1980. Four years is a substantial amount of time, *compare Keebler Co.*, 624 F.2d at 377 (three and one-half years without proof of actual consumer confusion), and Pignons' inability

---

2. The district court opinion states that Pignons offered "several instances in which customers have sought to purchase SX-70 cameras from them." However, the only instances mentioned by the court are those just discussed—a single misdirected order and a call to the president of T.A.G. On appeal, Pignons has pointed to no other examples of misguided attempts to purchase Polaroid cameras and our review of the record reveals none. At the hearing on the cross-motions for summary judgment, the district court twice asked Pignons to identify its evidence of actual confusion. No more than has already been discussed was forthcoming.

to bring forth more than this single, feeble and indirect example of possible consumer confusion strongly indicates that Polaroid's use of the mark "Alpha" has not created a likelihood of confusion, *compare Amstar Corp.*, 615 F.2d at 263 (finding only three instances of consumer confusion after 15 years of sales raises a presumption against likelihood of confusion).

(7) *Polaroid's intent in adopting its mark.* We adopt the district court's treatment of this factor:

> Polaroid claims the word Alpha was selected for use as part of the name of its SX-70 series because the cameras contain what is generally known within the company as "improved Alpha electronics" or "Alpha II" electronics. The term has allegedly been used internally at Polaroid since 1972 to describe the electrical circuitry being developed for use in the SX-70 camera.

> Plaintiffs do not dispute this explanation but claim that regardless of its origin, defendants' use of the term is confusing and therefore should be enjoined. Plaintiffs further allege that Polaroid's adoption and use of the term Alpha was "deliberate and was done with full knowledge of plaintiffs' mark and Trademark Registration for the mark ALPA and Polaroid's continued use of the mark Alpha is willful."

> \* \* \* \* \* \*

In the instant case, despite their general, conclusory allegations of "willfulness," plaintiffs have not adduced a scintilla of evidence of palming off, intent to deceive, or any effort whatsoever by Polaroid or Sears to benefit from Pignons' reputation through their use of the term Alpha. As discussed *supra*, defendants' packaging, advertising and promotional materials flatly belie any such notion.

(8) *The strength of Pignons' mark.* For summary judgment purposes, we think Pignons' mark "Alpa" is to be viewed as a relatively strong mark. The record shows that "Alpa" has been used on Pignons' cameras and photographic accessories since Pignons began marketing them in the United States in 1949. Pignons asserts moreover, and the record viewed favorably in its behalf supports, that it is a leader in the photographic industry, and that its product is both outstanding and innovative. Magazine comments speak of the mark "Alpa" as a "prestigious name" that has come to connote quality:

> For decades the name Alpa has stood for a bench-assembled 35 mm SLR [single lens reflex], as expensive as it is unconventional . . . .

Modern Photography, December 1977, at 117.

> For many years the name Alpa has been associated with very expensive, precision made 35 mm SLR cameras manufactured in Switzerland.

SLR Annual 1979, at 14. This evidence would indicate that within the market for sophisticated cameras, the mark "Alpa" possesses a degree of distinctiveness and popularity and hence may be a relatively strong mark.

The district court, to be sure, opined "that plaintiffs' mark is not inherently 'strong,' but lies somewhere in the middle range of distinctiveness." The similarity between "Alpa" and the mark "Alpha," a common, widely used word, *see Alpha Industries*, 616 F.2d at 445, has arguably diminished its distinctiveness. *See* 3 Callman, *supra*, § 82.1(1), at 760. According to the district court,

> Plaintiffs' own trademark search reports uncovered 27 federal registrations or applications, 5 state registrations, and 22 directory entries involving the word "alpha" alone or with other words. These included federal registration for "ALFA" for opthalmic lenses, "ALPHAX" for photographic equipment, and "AGFA" for cameras and parts. In addition, plaintiffs obtained a list of company names listing approximately 1200 uses of the word Alpha with other words, and approximately 75 uses of "alpha" as part of a word.

But while a finding of lesser strength might have been warranted after a trial, the sub-

missions now before us, viewed most favorably to Pignons, lead us to assume for present purposes that "Alpa" is a relatively strong mark.

◼ Notwithstanding our assumption in this regard, however, Pignons cannot prevail. "Strong" marks are accorded broader protection against infringement than are "weak" marks. *See Alpha Industries,* 616 F.2d at 445; *Amstar Corp.,* 615 F.2d at 259; 3 Callman, *supra,* § 82.1(1), at 755. That "Alpa" is a relatively strong mark reduces, *see Alpha Industries,* 616 F.2d at 445–46,[3] but does not relieve Pignons of the burden of substantiating its trademark infringement claim by sufficient evidence of a likelihood of confusion. On the showing that has been made, Pignons has failed to demonstrate an ability to meet that burden. Taking everything in Pignons' favor, still none of the factors relevant to a finding of likelihood of confusion supports Pignons' position. Indeed, it is difficult to discern any likelihood that Polaroid's use of the mark "Alpha" has caused or would cause confusion among potential consumers.

We, therefore, affirm the granting of summary judgment in favor of the defendants on Pignons' claims of trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and Massachusetts law, Mass.Gen.Laws c. 110B, § 11.[4]

## IV. *Unfair Competition*

◼ In the second count of its original complaint, Pignons claimed that Polaroid's use of the mark "Alpha" constituted unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Po-laroid's use of the mark "Alpha" allegedly created the likelihood "that purchasers will be confused as to the true source, sponsorship or affiliation of said cameras of Defendant Polaroid." In its supplemental complaint, however, Pignons added to its claim of unfair competition a number of allegations accusing Polaroid of falsely representing the color quality obtainable with its SX-70 film. Pignons asserted that some of the photographs purported in Polaroid's advertisements to have been taken with SX-70 film were in fact taken with special cameras using special film and were then carefully enhanced in the reproduction process. Because the district court felt that likelihood of confusion is an essential element of an unfair competition claim however couched, the court granted summary judgment in favor of the defendants based on the reasoning laid out in Part III, *supra.*

Pignons now argues that the district court construed section 43(a) of the Lanham Act too restrictively in requiring that it make a showing of likelihood of confusion to support its supplemental unfair competition claim. According to Pignons, Polaroid's advertising of SX-70 film constitutes a "false description or representation" of Polaroid's goods for purposes of section 43(a). Unlike a "false designation of origin," also proscribed by section 43(a), Pignons contends that a false description or representation is actionable without regard to the likelihood of consumer confusion. Pignons argues, in other words, that section 43(a) reaches not only "such false descriptions or representations as are of substantially the same economic nature as those which involve infringement or other improper use of trademarks," *Samson Crane Co. v. Union*

---

**3.** On the other hand, "[t]he greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion ...." Restatement (First) of Torts § 729, comment g, *quoted in Amstar Corp.,* 615 F.2d at 259–60.

**4.** Pignons argues that the district court erred in not applying the doctrine of "reverse confusion" to this case. In the ordinary trademark infringement case, the plaintiff objects to the defendant's use of a mark that will cause its goods to be associated with the plaintiff, thereby enabling the defendant to trade on the good-will attached to an established mark of the plaintiff. In a case of "reverse confusion," the plaintiff objects to the defendant's use of a mark that will cause consumers to associate the plaintiff's goods with the defendant. *See Capitol Films Corp. v. Charles Fries Productions, Inc.,* 628 F.2d 387 (5th Cir. 1980); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978). The difficulty with Pignons' argument is that in *either* sort of infringement case, likelihood of confusion must be established.

*National Sales, Inc.*, 87 F.Supp. 218, 222 (D.Mass.1949), *aff'd per curiam*, 180 F.2d 896 (1st Cir. 1950), but also encompasses mere false advertising. So understood, of course, section 43(a) would not necessarily require "use of a mark in interstate commerce which is likely to cause confusion or to deceive purchasers concerning the source of the goods." *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977). *See also Keebler Co.*, 624 F.2d at 378.

Whatever the merit of Pignons' position as an abstract proposition,[5] on the facts of this case the district court was clearly correct to require that Pignons support its unfair competition charges with a showing of likelihood of confusion. The protection afforded by section 43(a) extends to "any person who believes that he is or is likely to be damaged by the use of any . . . false description or representation." 15 U.S.C. § 1125(a). *See* Weil, Protectibility of Trademark Values Against False Competitive Advertising, 44 Calif.L.Rev. 527, 537 (1956).

Pignons purportedly falls within this class because Polaroid's use of the mark "Alpha" causes consumers to associate Polaroid's alleged false advertising of SX-70 film with Pignons' Alpa cameras, thus damaging Pignons' reputation. But as discussed in Part III, *supra*, Pignons has not made out a case that consumers are likely to associate the companies or products in this manner; Pignons has not, therefore, demonstrated that it can show any likelihood of damage from Polaroid's supposedly false claims concerning SX-70 film. Further, Pignons has not alleged that Polaroid's advertising diverts trade from Alpa cameras to SX-70 Alpha cameras, and we see no basis upon which

such an assertion could stand. It may be true that SX-70 cameras and film are a "system"—one apparently cannot be used without the other—so that representations made by Polaroid about the quality of its film are also to a degree representations about the quality of its cameras. But we find no evidence in the record to suggest that claims concerning the quality of color in Polaroid's instant photographs might cause a prospective purchaser of a Pignons Alpa camera to buy a Polaroid SX-70 Alpha instead. Pignons has offered no reason to believe that whatever the nature of their competition in other respects (*e. g.*, sophistication of technology, *see* Part III, *supra*), Alpa cameras and Polaroid SX-70 Alpha cameras compete with regard to quality of color reproduction. We sustain the granting of summary judgment in favor of defendants on Pignons' original and supplemental counts of unfair competition under section 43(a) of the Lanham Act.[6]

### V. *Trademark Dilution*

The only remaining aspect of Pignons' original and supplemental complaints is its claim that Polaroid's use of the mark "Alpha" justified injunctive relief under Mass.Gen.Laws Ann. c. 110B, § 12 which provides that,

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

To sustain an action under this provision, a plaintiff must show that its mark is distinc-

---

5. We express no opinion on this issue. *See generally* Derenberg, Federal Unfair Competition Law at the End of the First Decade of the Lanham Act: Prologue or Epilogue?, 32 N.Y.U. L.Rev. 1029 (1957); Germain, Unfair Trade Practices Under Section 43(a) of the Lanham Act: You've Come a Long Way, Baby—Too Far, Maybe?, 49 Ind.L.J. 84 (1973).

6. Pignons complains of having been deprived of discovery on this issue by Polaroid's refusal to answer certain interrogatories and by the district court's failure to compel Polaroid to an-

swer the supplemental complaint and interrogatories. We have examined the discovery requests here pertinent and note that for the most part they seek only evidence that might demonstrate Polaroid's advertising was in fact false, a question we do not reach in disposing of Pignons' claims. Pignons' failure to proffer evidence of possible injury—the fatal flaw in its claim—is thus not attributable to any purported frustration of its discovery attempts by Polaroid or the district court.

tive, *see S. S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 697 (1st Cir. 1979), and that the defendant's use of a similar mark has created the likelihood of dilution. The district court, being "unconvinced plaintiff's mark has any particular distinctiveness," concluded that Pignons had failed to substantiate the first element of its trademark dilution claim and so entered summary judgment in favor of the defendants.[7] We would be unable to sustain summary judgment on this ground. In Part III(8), *supra*, we summarized the evidence relevant to the strength of the mark "Alpa." Viewed in a light most favorable to Pignons, we cannot say at this preliminary stage that this evidence could not support a finding that among purchasers of sophisticated cameras, Pignons' mark "is a strong mark well known to the public, used frequently as a synonym for quality of a very high degree." *Tiffany & Co. v. The Boston Club, Inc.*, 231 F.Supp. 836, 842–43 (D.Mass.1964). We conclude that Pignons has raised a genuine issue of fact as to whether the mark "Alpa" is sufficiently distinctive to warrant protection under Mass.Gen.Laws Ann. c. 110B, § 12. *Compare Food Fair Stores, Inc. v. Food Fair, Inc.*, 83 F.Supp. 445 (D.Mass.1948), aff'd, 177 F.2d 177 (1st Cir. 1949); *Great Scott Food Market, Inc. v. Sunderland Wonder, Inc.*, 203 N.E.2d 376, 348 Mass. 320 (1965); *Skil Corp. v. Barnet*, 150 N.E.2d 551, 557, 337 Mass. 485, 494 (1958).

This does not, however, change the outcome. Though the district court never reached the second element of a trademark dilution claim, our review of the record reveals no evidence sufficient to support a finding that Polaroid's use of the mark "Alpha" creates a "livelihood . . . of dilution of the distinctive quality" of Pignons' mark. Summary judgment in favor of the defendants is therefore appropriate on this

ground, and we accordingly uphold the judgment of the district court.

There are, generally speaking, three interpretations that have been given to the term trademark dilution. The term has sometimes been restricted to the injury to the value of a mark caused by actual or potential consumer confusion. *See Esquire, Inc. v. Esquire Slipper Manufacturing Co.*, 139 F.Supp. 228, 232–33 (D.Mass.1956), *vacated and remanded on other grounds*, 243 F.2d 540 (1st Cir. 1957). As already demonstrated in Part III, *supra*, Pignons has failed to make out a threshold showing that Polaroid's use of the mark "Alpha" might cause confusion about the source of Alpa cameras or the nature of the relationship between Polaroid and Pignons.

Trademark dilution has also been applied to the injury that results from the use of a mark by the defendant in a way that detracts from, draws on or otherwise appropriates the goodwill and reputation associated with the plaintiff's mark. *See Great Scott Food Market*, 203 N.E.2d at 380, 348 Mass. at 325, *quoting Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928). *See also Tiffany & Co.*, 231 F.Supp. at 842–44; *Dobeckmun Co. v. Boston Packaging Machinery Co.*, 139 F.Supp. 321, 323 (D.Mass.1955). Here, Pignons' reputation has remained perfectly distinct from Polaroid's. The mark "Alpha" is always used on Polaroid cameras and in Polaroid advertisements in conjunction with a uniquely identifying designation, such as "Polaroid SX-70 Land Camera Alpha 1," "Polaroid SX-70 Alpha Executive Land Camera," or "Polaroid SX-70 Land Camera Alpha Sears Special." The name "Polaroid" is a very strong trademark, *see Polaroid Corp. v. Polaroid, Inc.*, 319 F.2d 830, 831–32 (7th Cir. 1963), and we think it neither likely nor does the record suggest that anyone seeing the word "Alpha" in juxtaposition with the name

---

7. The district court also felt that Pignons' request for injunctive relief might be moot "[i]n view of defense counsel's representation to the Court that Polaroid has ceased manufacturing and distributing SX-70 cameras bearing the model designation 'Alpha.' " However, an affidavit submitted by Polaroid reveals that as of August 11, 1980, Polaroid had about 12,000 SX-70 Alpha Land cameras remaining in its inventory. There being no evidence to indicate how these cameras will be disposed of, we cannot uphold the district court's entry of summary judgment on mootness grounds. Of course, further factual development might show that the court was correct in this regard.

"Polaroid" could ever identify or associate the mark with Pignons' mark "Alpa." The use of a uniquely identifying tradename has indeed sometimes been found to be an adequate remedy for trademark dilution. *See Food Fair Stores*, 83 F.Supp. at 452–53; *Skil Corp.*, 150 N.E.2d at 557–58, 337 Mass. at 494–95.

Finally, trademark dilution has sometimes been said to encompass any diminution in the uniqueness and individuality of the plaintiff's mark resulting from the defendant's use of a similar mark. *See Polaroid Corp.*, 319 F.2d at 836–37 (construing the Illinois Anti-dilution Statute); *Dobeckmun*, 139 F.Supp. at 323; 3 Callman, *supra*, § 84.2; Note, Dilution: Trademark Infringement or Will-O'-The Wisp?, 77 Harv. L.Rev. 520, 521–23, 531 (1964). We need express no opinion on this theory. Even if accepted, we do not think it would warrant relief here. The mark "Alpa" as associated with Pignons' cameras may be distinctive, but it is scarcely a unique word. This is borne out by the fact that "Alpha," which Pignons claims is sufficiently similar to Pignons' mark to dilute its value, is virtually a household word—the first letter of the Greek alphabet, an ingredient of many a college fraternity name and found on many a product label. *See Alpha Industries*, 616 F.2d at 445. As the district court found, Plaintiffs' own trademark search reports uncovered 27 federal registrations or applications, 5 state registrations, and 22 directory entries involving the word "alpha" alone or with other words. These included federal registration for "ALFA" for opthalmic lenses, "ALPHAX" for photographic equipment, and "AGFA" for cameras and parts. In addition, plaintiffs obtained a list of company names listing approximately 1200 uses of the word Alpha with other words, and approximately 75 uses for "alpha" as part of a word.

Pignons' claim of dilution thus rests on some kind of supposed incremental harm sustained through Polaroid's use of a commonplace word, widely associated with many situations and products, where there is shown neither product confusion nor misappropriation of goodwill or reputation. This will not do. We have found no case to support the proposition that an injury so attenuated and speculative is cognizable under the anti-dilution statute. We are in accord with Judge Aldrich's comments 26 years ago:

> Where dilution of the sort here objected to is inherent in the nature of the mark ... I will not hold that a nonconfusing and otherwise proper use of that word in a different mark can be enjoined simply because it may increase plaintiff's instability.

*Dobeckmun*, 139 F.Supp. at 323 (Aldrich, D.J.).[8] We therefore uphold the granting of summary judgment in favor of the defendants on Pignons' claim of trademark dilution under Mass.Gen.Laws Ann. c. 110B, § 12.

*Affirmed.*

---

8. This is consistent with the statement in *Great Scott Food Market* that "relief under the statute is not dependent on uniqueness of name." 203 N.E.2d at 379, 348 Mass. at 324. In *Great Scott Food Market*, the defendant, by using the plaintiff's mark, appropriated " 'the reputation, goodwill and value connected with the plaintiff's trade name' " and created a possibility of actual confusion.