**COPY COP, INC., Plaintiff,**

v.

**TASK PRINTING, INC., d/b/a Signal Graphics Printing,**

**and**

**Sampa Corp., Defendants.**

**Civ. A. No. 94–10854–PBS.**

United States District Court, D. Massachusetts.

Oct. 16, 1995.

Donald Brown, Ernest V. Linek, Dike, Bronstein, Roberts & Cushman, Boston, MA, Richard E. Gentilli, Kaye, Fialkow, Richmond & Rothstein, Boston, MA, for Copy Cop, Inc.

Harold R. Bruno, Hopper & Kanouff, P.C., Denver, CO, Jonathan M. Feigenbaum, Jeffrey J. Phillips & Associates, P.C., Boston, MA, Dennis Graham, Hopper & Kanouff, Denver, CO, for Task Printing Inc., Teresa Greco, Anthony Greco, Sampa Corporation, and Broadway Shop, Inc.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SARIS, District Judge.

### INTRODUCTION

Plaintiff Copy Cop, Inc. ("Copy Cop") and defendant Sampa Corporation ("Sampa")

**40**

both use a British bobby cop logo in their photocopying and printing businesses. Copy Cop's registered trademark is on the left, and Sampa's on the right.

Copy Cop filed federal and state claims of trademark infringement and unfair trade practices against Sampa Corporation and its franchisee, defendant Task Printing, Inc. ("Task"). Copy Cop now moves for partial summary judgment on its claims of federal trademark infringement in violation of 15 U.S.C. § 1114 (Count I), federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count II) and common law trademark infringement (Count IV). It seeks a declaration that Sampa's logo infringes on Copy Cop's registered trademarks and a permanent injunction prohibiting Sampa's or Task's use of a bobby cop in Massachusetts. After hearing, the Court *ALLOWS* Copy Cop's motion for partial summary judgment, and orders Sampa Corporation and Task Printing to cease using the bobby cop logo in the Boston area.

### UNDISPUTED FACTS

Construing the facts in the light most favorable to the non-moving party, defendant Sampa Corporation, the Court treats the following facts as undisputed. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 815 (1st Cir.1987).

*Copy Cop*

Copy Cop is a Massachusetts corporation that provides photocopying, reproduction, and offset printing services at fourteen locations in the Boston metropolitan area.[1] Since 1967, Plaintiff has used the corporate name "Copy Cop" along with a depiction of a

British bobby cop. The name "Copy Cop" was registered with the United States Patent Office in 1968, and a cartoon cop was registered in 1972 as the "single cop" design. Since 1969 Copy Cop has also used a more stylized depiction of cops in triplicate, which was registered in 1972 as the "triple cop" design. In 1978 Copy Cop registered the triple cop logo with the slogan "Call the Cops," and in 1983 the free-standing slogan "Call the Cops." Finally, in May 1992 Copy Cop filed an application to register a single cop in the style of its triple cop design. Sampa filed an opposition to this application, and the entire proceeding has been stayed pending the outcome of this litigation.

Copy Cop uses its triple cop logo and a blue and white color scheme on its stores, in its advertising, and on its products. Over the years it has spent millions of dollars promoting its marks through advertising on radio, on television, and in print, including advertisements in the yellow pages, in public transit cars, and on flyers and calendars. Every Copy Cop storefront, product, and advertisement features prominently the cop logo, so that its copying business is strongly associated with the cop image and concept. By all accounts, Copy Cop's logo and slogan are "highly visible" in the Boston area. *See, e.g.*, Letter from Task Printing president Anthony Greco to Sampa Corporation, December 23, 1992. Inside the Boston metropolitan area, the public associates a cop design with Copy Cop.[2]

---

1. For the purposes of this opinion and order, and by agreement of the parties, the "Boston metropolitan area" or "greater Boston area" will be defined as the area within the circle created by Interstate Route 495.

2. Sampa appears to concede this point. Memorandum in Opposition at 6, ¶ 8 (claiming only a dispute over "[w]hether in any location other than the Boston metropolitan area the public associates a "cop" design with the Plaintiff").

Although advertising containing Copy Cop's mark has appeared outside of the Boston area, and Copy Cop has some business customers outside Route 495, there have never been any Copy Cop stores outside of the metropolitan area.[3]

*Sampa and Task*

Defendant Task Printing, Inc., doing business as Signal Graphics Printing, is a Massachusetts corporation that has since 1993 provided photocopying, reproduction, and offset printing services similar to those of Copy Cop at a single location in Newton, a town within the greater Boston area. Sampa president Stephen Morris describes Signal Graphics' services as "similar" to those of Copy Cop. Task is a franchisee of Sampa, a Colorado corporation incorporated in 1984 to sell Signal Graphics Printing franchises.

Sampa and its predecessors in interest have used a bobby cop leaning out from behind a traffic signal as a logo since at least October 1977. In 1988 Sampa registered the traffic signal with bobby cop logo.

Sampa's logo was used only in Colorado until 1989, when its franchises first expanded out of state. Sampa franchises entered New England with the opening of a Rhode Island franchise in March 1992. The first, and only, franchise to open within the greater Boston area was defendant Task's franchise in 1993 in Newton Corner. Copy Cop has locations in a nearby town, Waltham, and in another section of Newton, Chestnut Hill. Task's franchise agreement was executed in February 1993. The record does not indicate when Task's store in Newton actually opened.

Sampa franchises advertise through flyers, mass mailings, radio, television, yellow pages, signs on public transit, and newspapers. Task itself has spent thousands of dollars in promoting its name and logo over the past two years.

Sampa generally uses a red, yellow, and green color scheme in its traffic signal logo and on the storefronts of its franchises. A black-and-white version of its logo, however, currently appears in yellow pages advertising. *See* NYNEX Yellow Pages for Newton, Wellesley, Needham, Sept. 1995–Aug. 1996, at 324. Sampa sometimes used the bobby cop logo alone in advertising. The logo as a whole is referred to inside the company as the "bobby logo." Task used a free-standing bobby cop in a 1993 advertisement but has since stopped using it.

*Parties' knowledge of each other's marks*

In 1989 Copy Cop became aware that Sampa was using a similar logo in Colorado when it saw an ad for franchises in a business publication. Copy Cop's president Gerstein first became aware of the Boston-area Signal Graphics franchise in the summer of 1993. In late 1993, after the opening of the Boston-area franchise, Copy Cop sent a cease and desist letter to Task and raised a challenge to Sampa's registration in the United States Patent and Trademark Office. That proceeding has been stayed pending resolution of this litigation.

Anthony Greco, the owner of Task, asserts that he would not have purchased the Signal Graphics Printing franchise from Sampa had Copy Cop challenged Sampa's use of the mark prior to his purchase.

Sampa's president became aware of Copy Cop's logo in August 1992 while in Boston on vacation. Task put Sampa on notice again when it raised the issue of possible trademark infringement during its franchise negotiations in December 1992. Sampa agreed in the franchise agreement to add a clause to the contract indemnifying Task against trademark infringement litigation.

### CONSUMER CONFUSION

Before ruling on the motion for summary judgment, the Court must address two threshold questions dealing with the admissibility of evidence concerning consumer confusion. Copy Cop through its president presents hearsay evidence of two consumer queries to store employees indicating confusion between Signal Graphics and Copy Cop. Without direct testimony from the employees who heard these queries, this evidence would

---

3. There is a factual dispute as to the amount of business that Copy Cop derives from customers outside the Boston area.

not be admissible at trial and thus cannot be considered in a motion for summary judgment.

■ Copy Cop also presents the results and analysis of a consumer survey performed by Sorensen Marketing in April 1995 at the Watertown Shopping Mall, within a few miles of Task's and Copy Cop's locations. The survey results, attached as exhibits to a memorandum of law, are technically not presented in the proper form. At summary judgment, evidence should be submitted through the affidavit or certification of a competent witness. Fed.R.Civ.P. 56(e). However, because Sampa did not contest the threshold admissibility of the report in its responsive pleading, the Court will consider it as if properly authenticated. See Cerqueira v. Cerqueira, 828 F.2d 863, 865 (1st Cir.1987) (considering exhibits without affidavits where both parties accepted the exhibits as genuine). Attached to the analysis as Exhibit H is a curriculum vitae detailing Dr. Robert C. Sorensen's experience and publications in the field of survey research. Defendants do not contest Sorensen's qualifications as an expert. One of the Sorensen survey's findings was that, out of 200 consumers who were shown only a Signal Graphics calendar, in color, with the tradename "Signal Graphics" printed alongside the logo, 16.5% responded to an open-ended question by identifying the sponsor as Copy Cop.

■ Sampa vigorously contests the validity of the survey, arguing that there was no independent validation of the interviewers' work, that there was no control group, that there was an improper side-by-side comparison, that the questions were leading, and that variation in surveyors' responses suggests that some of the surveyors may have indicated the "proper" answer to the open-ended questions.

The only evidence Sampa presents on this point, however, is a written critique of the Sorensen survey by one Edward Epstein. The record contains no description of Epstein's education or expertise in the field of survey research or generally. Epstein's sworn "declaration" states only that he is over 21 years of age and has been paid to read and evaluate the Sorensen survey. Under these circumstances, Epstein cannot be treated as an expert and his opinions and legal conclusions are insufficient to raise a genuine issue of material fact as to the reliability of the survey methods.[4]

In any event, even assuming that some or even most of the interviewers may have been unreliable or even suggested answers, as Epstein argues, there remains the undisputed fact that before there was any showing of the Copy Cop calendar that could lead to a side-by-side comparison, and before there was any reference to the cop portion of the logo, some respondents thought that the Signal Graphics calendar was sponsored by Copy Cop.

### DISCUSSION

*1. Summary Judgment Standard*

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso*, 37 F.3d 760, 762 (1st Cir.1994) (citing cases).

"To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id.* (citations omitted). The nonmovant cannot simply rest upon

---

4. Copy Cop presents as an exhibit to its Reply Memorandum a declaration of Dr. Sorensen that responds in detail to Mr. Epstein's critique. The Court notes that this declaration is neither sworn nor attached to an affidavit. The Court thus does not rely upon this declaration.

mere allegations. *Id.* Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue. *Id.* Rule 56(e) "requires nonmovants to submit evidence that would be admissible at trial to oppose properly supported motions for summary judgment." *FDIC v. Fonseca,* 795 F.2d 1102, 1110 (1st Cir.1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers, supra* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

"While infringement and unfair competition cases often present factual issues that render summary judgment inappropriate, this is not invariably so." *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir. 1989) (reversing trial court's entry of summary judgment for defendant and entering summary judgment for plaintiff in trademark infringement action); *see also Volkswagenwerk,* 814 F.2d at 814 (affirming summary judgment for plaintiff in trademark infringement action). "[T]he Court may determine that the facts have been fully developed through pleadings, affidavits, documents and exhibits and that the legal issues are squarely presented." *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 498 F.Supp. 805, 809–10 (D.Mass.1980), *aff'd* 657 F.2d 482 (1st Cir.1981).

### 2. The Claims

■ Count I of Copy Cop's complaint alleges federal trademark infringement in violation of 15 U.S.C. § 1114. This section "proscribes the unauthorized use of a mark similar enough to a federally registered trademark to be 'likely to cause confusion, or to cause mistake, or to deceive.'" *Aktiebolaget Electrolux v. Armatron International, Inc.,* 829 F.Supp. 458, 460 (D.Mass.1992) (quoting 15 U.S.C. § 1114(1)), *aff'd* 999 F.2d 1 (1st Cir.1993). To make out a claim of trademark infringement, Copy Cop must show: "(1) the ownership of a registered mark entitled to trademark protection; (2) the use of that [mark] in interstate commerce; and (3) its use by another in a manner likely to cause confusion or mistake when compared with the plaintiff's registered mark." *Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.,* 762 F.Supp. 404, 409 (D.Mass.1991). Sampa has not disputed the existence of the requisite connection with interstate commerce. *Cf. Tiffany & Co. v. Boston Club, Inc.,* 231 F.Supp. 836, 841 (D.Mass.1964) (describing the minimal interstate connections necessary to establish jurisdiction under the Lanham Act).

■ Copy Cop's federal registration of its marks is prima facie evidence of its exclusive right to use the registered mark in commerce. 15 U.S.C. § 1115(a). Copy Cop's marks are therefore entitled to a presumption of validity by virtue of their registration. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 196, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985) (citing 15 U.S.C. § 1115(a)). Unless the trademarks have become incontestable,[5] the presumption of validity that attaches to a registered trademark may be rebutted with evidence that proves by a preponderance any of the defenses listed in 15 U.S.C. § 1115(b), such as a defect in the registration or another user's priority. *See Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 373 (1st Cir. 1980); 15 U.S.C. § 1115(a), (b).

■ Sampa has presented no evidence to rebut the presumption that Copy Cop has an exclusive right to the use of its mark. Sampa has neither pointed to a defect in Copy Cop's trademarks nor alleged facts that would demonstrate that Sampa's mark has priority. Sampa admits that its mark is junior to Copy Cop's marks. Sampa alleges only that its predecessors entered the copying business in 1974, a date subsequent to

---

5. Copy Cop's marks appear to have been registered and in use for the statutory five-year period that would make them incontestable. The owner of an incontestable mark enjoys a conclusive presumption of exclusive right to its use. *See* 15 U.S.C. §§ 1065, 1115(b); *see also Park 'N Fly,*

469 U.S. at 191, 105 S.Ct. at 660. However, Copy Cop has not claimed that it is entitled to the conclusive presumption, and there is no evidence in the record that Copy Cop filed the affidavit necessary to establish incontestability.

the undisputed dates of Copy Cop's registrations of the bobby cop logos. Thus Copy Cop owns valid trademarks that are entitled to protection.

Count II of Copy Cop's complaint alleges violation of the federal unfair competition statute, 15 U.S.C. § 1125. This section "creates a statutory tort broader than common law unfair competition and the law of infringement," *Aktiebolaget Electrolux v. Armatron International, Inc.*, 829 F.Supp. 458, 460–61 (D.Mass.1992), *aff'd* 999 F.2d 1 (1st Cir.1993). "Claims under either section may be established by proving a likelihood of confusion." *Id.* at 461. The same is true of Copy Cop's allegation of common law trademark infringement in Count IV. *See Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F.Supp. 648, 652 (D.Mass. 1984).

### 3. *Likelihood of Confusion*

 The likelihood of consumer confusion is generally the key element of claims for federal trademark infringement and unfair competition. *See, e.g., Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 492–93 (1st Cir.1981). Likelihood of confusion is conventionally measured according to eight factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendants' intent in adopting the mark; and (8) the strength of the mark. *See, e.g., Volkswagenwerk*, 814 F.2d at 817. After applying the 8–factor confusion test to the undisputed facts, this court finds a substantial likelihood of consumer confusion.

#### a. *Similarity of the marks*

 To begin with, there is a startling visual similarity between the cops in the black-and-white versions of the Copy Cop logo and the Sampa logo. The cop in Copy Cop's triple cop logo wears a solid uniform and a high hat with a badge in the center, has a thick mustache, and has his left hand raised as if to stop traffic. The Sampa cop also wears a solid uniform and a high hat with a badge in the center, has a thick mustache, and has his left hand raised as if to stop traffic. In contrast to Copy Cop's cop, Sampa's cop sports a badge on his chest, a different neckline, a stripe on his sleeve, and differentiated fingers. The badge on his hat has five instead of eight points, and his eyes are completely rather than only partially covered by his hat. These minor differences, however, do not diminish the striking similarity of the pictures. In fact, Sampa does not seriously contest the similarity of the cops alone.

 What Sampa does contest is the likelihood of confusion between the marks in their entirety as they actually appear in the marketplace. Sampa correctly urges that, in adjudging the similarity of the marks, the relevant standard is the "total effect" of the mark, considering sight, sound, and meaning. *See, e.g., Volkswagenwerk*, 814 F.2d at 817; *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1009 (D.Mass. 1988). "Similarity of the marks must be considered in light of what occurs in the marketplace, taking into account the 'circumstances surrounding the purchase of the goods' or services." *Calamari Fisheries*, 698 F.Supp. at 1009 (quoting *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir.1980)).

Sampa argues that Copy Cop's preferred use of its triple cop design minimizes the likelihood of confusion with Sampa's individual cop, and that Copy Cop only rarely uses a "token" single cop in its business. Even if Copy Cop never uses its single cop design, however, the cops remain so similar as to create a substantial likelihood of confusion.

Sampa points out that its logo consists of a traffic signal with a bobby cop, while Copy Cop's logo is only a cop. It is, however, undisputed that the cops have appeared alone on Sampa materials. Several mailings have featured cops prominently, without any traffic signal at all except as part of the miniature logo printed above the return address. Task argues that it has ceased using freestanding cops, and that the complete logo focuses only on the signal. Even if the New-

ton store never again uses freestanding cops, this Court holds that, given the strength of Copy Cop's marks in the Boston area, the association of a cop with a quick copying business in the Boston area creates a substantial likelihood of consumer confusion whether or not it is partially covered by a traffic signal.

A stronger argument is that the different color schemes of the two companies eliminate the likelihood of confusion. Copy Cop uses blue and white in its storefronts, materials, and advertising. Sampa's franchises use the red, yellow, and green colors of a traffic signal in the color logo. However, there is undisputed evidence that Sampa's marks do not always appear in color. *See, e.g.,* NYNEX Yellow Pages. Particularly in the copying business, it is virtually a certitude that a logo will frequently appear in black and white, rather than in color. For example, any letterhead that was photocopied or went through a fax machine would appear black and white.

Task also points to the color scheme of its storefront as decreasing the similarity of the marks in the marketplace. It submits color photographs of Copy Cop franchises, all of which have a blue and white color scheme, and several of which have solid blue awnings, to contrast with the Signal Graphics franchise storefront, which has prominent red, yellow, and green stripes across its windows. However, although there are indeed red, yellow, and green stripes around the front of the Signal Graphics store, defendants' photograph also reveals a solid blue awning over the Signal Graphics store, reducing the contrast between the storefronts and adding to the likelihood of consumer confusion.

The trade names Copy Cop and Signal Graphics, of course, bear no similarity whatsoever. Sampa argues that its logo always appears with the trade name alongside, thereby eliminating the likelihood of confusion. "[U]nder certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer." *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1205 (1st Cir.1983). Here, the use of the trade name diminishes the likelihood of confusion, but does not eliminate it. In the Boston area, the cop itself is strongly associated with Copy Cop regardless of what words appear alongside. This conclusion is consistent with the Sorensen survey. *Cf. Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 257 (2d Cir.1987) (affirming district court's determination that the depiction of a flying horse is so strongly associated with the Mobil Oil Corporation that the word "Pegasus" used by another company infringed on Mobil's trademark).

### b. *Similarity of the services*

There is no serious dispute that the parties are both involved in photocopying, offset printing, and graphics services. Sampa questions whether printing includes photocopying, Memorandum in Opposition at 6, ¶ 10, and suggests that its franchises focus on printing rather than copying. Even if the focus of Signal Graphics' franchises is different, there is substantial overlap between the services of the two businesses, as the Signal Graphics mailings indicate, and as Sampa's president admits.

### c. *Trade Channels/Advertising/Marketing*

The overlap between the parties' trade channels, advertisers, and markets are three factors conventionally analyzed together. *See, e.g., Volkswagenwerk,* 814 F.2d at 818. Here, there is no serious dispute that the walk-in copying stores of Copy Cop and Signal Graphics compete for same customers and advertise in the same media to reach the same consumers.

On the undisputed facts, however, the overlap of trade channels, advertising, and marketing is limited to the Boston metropolitan area.

### d. *Actual confusion*

Actual confusion is often taken to be the most persuasive possible evidence that there is a likelihood of confusion. *See, e.g., Calamari,* 698 F.Supp. at 1011. Actual confusion is such persuasive evidence of the likelihood of confusion that even a minimal demonstration of actual confusion may be significant. *See Boston Athletic Association v. Sullivan,* 867 F.2d 22, 31 (1st Cir.1989). A "showing of actual confusion is not essential

in order to find a likelihood of confusion." *Volkswagenwerk*, 814 F.2d at 818. "Lack of actual confusion has been held to be prejudicial ... only when the goods or services of the parties have other substantial disparities." *Id.* Here the services of the parties are essentially the same.

"[A]bsent evidence of actual confusion, when the marks have been in the same market, side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion." *Pignons*, 657 F.2d at 490. Three to four years of coexistence has been held to be a "substantial" period of time. *Id.* These marks have coexisted in the same geographic area for only two years.

Here Copy Cop presented a survey by Sorensen Marketing as evidence of consumer confusion. *See Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400 (8th Cir.1987) (noting that surveys are often used to demonstrate actual consumer confusion and affirming the district court's decision to rely upon a survey by Sorensen Marketing), *cert. denied*, 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988).

#### e. *Defendant's intent*

■ "Intentional copying of a registered trademark gives rise to a presumption of likelihood of confusion." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987). Copy Cop has not alleged that Sampa initially copied Copy Cop's trademark, nor is there proof that Sampa intended at any time to create confusion between Copy Cop's and Sampa's trademarks. On the other hand, it is undisputed that Sampa was aware of Copy Cop's mark at the time it entered the Boston market. In addition, before a franchise agreement was signed, Sampa's franchisee made Sampa aware of the strength of Copy Cop's mark in the Boston area and pointed out the similarity of the marks.

However, "[m]ere knowledge of the existence of a competitor's mark is insufficient to prove bad faith." *NEC Electronics, Inc. v. New England Circuit Sales, Inc.*, 722 F.Supp. 861, 866 (D.Mass.1989); *see also Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d 576, 584 (2d Cir.1991) (holding that the "adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith"). The undisputed facts are insufficient to demonstrate bad faith or intentional copying on the part of Sampa.

#### f. *Strength of the mark*

■ The strength of a mark is ordinarily measured by such factors as: the length of time a mark has been used; the plaintiff's relative renown in its field; the plaintiff's vigilance in promoting its mark; the number of similar registered marks in the field; and the success of other firms in registering similar marks. *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 33 (1st Cir.1989). *See Volkswagenwerk*, 814 F.2d at 819 ("Strong marks are accorded broader protection against infringement than are weak marks."); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987) ("Mobil's ubiquitous presence throughout the petroleum industry further increases the likelihood that a consumer will confuse Pegasus Petroleum with Mobil.")

■ Copy Cop has spent significant amounts of money on promoting its bobby cop and "Call the Cops" marks for a substantial length of time, with great success. Sampa does not and cannot seriously contest the renown of Copy Cop in the Boston area.

Based on these factors, the Court concludes that the Copy Cop's bobby is a strong mark. The overwhelming strength of Copy Cop's marks in the Boston area is an essential factor in this Court's determination that there is a substantial likelihood of consumer confusion in this case.

Sampa points to numerous users of the bobby cop mark across the country, apparently as evidence of the weakness of Copy Cop's marks. It is true that a search of registered trademarks turned up many logos that feature either bobby cops or American cops. However, aside from Copy Cop and Sampa, there are no currently valid federal registrations of cops in the context of printing or copying services. The only other cop logo that turned up in the search no longer has a valid registration. It was an Ameri-

can-style cop that was used by a California company named "One Stop Copy." Copy Cop challenged One Stop Copy's attempt to register its mark and succeeded in terminating the registration in 1990. One Stop Copy's American-style cop was also very different from the bobby cops at issue in this case. In fact, few if any of the nationally registered cop marks are as similar in design as those of Sampa and Copy Cop.

Finally, third party registrations of similar trademarks are material in determining the strength of a mark "only to the extent that the similar marks are promoted by their owners or recognized by the consuming public." *McGraw–Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1171 (7th Cir.1986). Sampa does not allege that any other cop logo is promoted in the Boston area, or that Boston area consumers are familiar with any other cop logo.

### 4. *Laches*

Sampa raises the affirmative defense of laches to Copy Cop's claim of trademark infringement. "Defendants have the burden of proving laches." *Lotus Development Corp. v. Paperback Software International*, 740 F.Supp. 37, 82 (D.Mass.1990) (citing *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)). To prevail, "defendants must prove by a preponderance of the evidence (1) that plaintiff inexcusably and unreasonably delayed in bringing this action; and (2) that the delay has prejudiced defendants." *Id.* (citing *Gardner v. Panama R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951)). Sampa has failed to submit admissible evidence to create a dispute of material facts that would allow it to meet this burden.

Sampa argues that "[i]n 1988 the Plaintiff knew that SAMPA used a bobby in its logo but waited until April of 1994 to commence this proceeding." Memorandum in Opposition at 23. This argument fails under the cases, which hold that a party's "failure to object to limited geographic use of a mark does not bar it from objecting later to widespread use of the mark." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 367 (6th Cir.1985), *cert. denied*, 476 U.S. 1158,

106 S.Ct. 2277, 90 L.Ed.2d 719 (1986); *see also Coco Rico, Inc. v. Fuertes Pasarell*, 738 F.Supp. 613, 619 (D.P.R.1990) (holding that the use of a mark in the northeastern United States did not cause laches to accrue in Puerto Rico). That Copy Cop waited until some viable impact on its business is excusable delay. It is unclear whether Copy Cop even had a viable claim until the franchise opened in Newton, given that the local franchise is the source of the overlap in trade channels, advertising, and marketing, and the source of the most likely consumer confusion. It is axiomatic that "a senior user cannot be guilty of laches until his right ripens into one entitled to protection." *Coco Rico*, 738 F.Supp. at 619.

Sampa also argues that Copy Cop knew of Sampa's intention to sell franchises nationally and thus should have objected to Sampa's use of the mark before a franchise was actually sold in Massachusetts. The only evidence on this point is the testimony of Copy Cop president Michael Gerstein that his knowledge of Sampa's national franchise program necessarily translated into an understanding that Sampa *might* sell a franchise in Boston. However, there is no allegation that Copy Cop was aware of the franchise negotiations or the franchise agreement until Gerstein noticed the franchise in operation in Newton in the summer, 1993. Waiting until a franchise actually appears makes good business sense, and is not inexcusable delay. "A reasonable businessman should be afforded some latitude to assess both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursuing litigation on the issue." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986).

Even if this delay were inexcusable, Sampa has failed to allege undue prejudice from the delay. Task was aware of Copy Cop's objection in December 1993, when the cease and desist letter was sent. In addition, "[i]f prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay." *Tisch Hotels,*

**48**

*Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 615 (7th Cir.1965). Yet, cases hold that "[t]o deny injunctive relief in trademark litigation ... some affirmative conduct in the nature of an estoppel, or conduct amounting to 'virtual abandonment,' is necessary." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 366 n. 2 (6th Cir.1985) (citations omitted), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). There is no allegation that Copy Cop abandoned its marks, or that it ever communicated to Sampa its acquiescence in Sampa's use of a similar mark. Without these allegations, Sampa cannot establish a genuine issue of material fact sufficient to preclude summary judgment on its defense of laches.

*5. Relief*

*a. Injunctive relief*

■ A district court has broad discretion to fashion an injunction to suit the circumstances in the particular case. *See, e.g., Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."). The Supreme Court has repeatedly made clear that this is generally true even when the injunctive remedy is congressional in origin. *See Williams v. Jones,* 11 F.3d 247, 256 (1st Cir.1993) (citing cases).

*b. Declaratory relief*

Because the Court's holding that there is a likelihood of confusion is dependent upon the strength of Copy Cop's mark in the Boston area, the declaratory judgment is limited to the Boston area as well. Also, there is a genuine issue of material fact concerning the laches defense in geographic areas outside Massachusetts. To the extent Copy Cop seeks in its motion for summary judgment a declaration of trademark infringement outside the Boston area, the motion is denied.

*ORDER*

The Court *ALLOWS* Copy Cop's motion for partial summary judgment.

■ For the foregoing reasons, this Court *ALLOWS* plaintiff's motion for a permanent injunction, and enjoins defendants Sampa Corporation, Task Printing, and Signal Graphics Printing, their officers, agents, employees, attorneys, successors, assigns, members and all persons in active concert or participation with them, from using a logo that includes a bobby cop in connection with printing or copying services within the Boston metropolitan area, defined as the area including and surrounding the city of Boston, Massachusetts, and extending out to Interstate Route 495. Task shall have ninety (90) days to change its logos. Because the record is unclear on the length of time necessary to make this adjustment, Task may submit an affidavit within ten days of entry of this order seeking a reasonable extension of this period of time.

At the hearing on the motion for summary judgment, plaintiffs' counsel suggested that as a practical matter, allowance of the motion for summary judgment may well make moot the remaining claims and requests for relief. Unless plaintiff informs the Court that it seeks additional relief, or is pressing its remaining claims, within ten days of entry of this order, the Court will order entry of final judgment.