The STOP & SHOP SUPERMARKET
COMPANY, and Fullerton Corp.,
Plaintiffs,

v.

BIG Y FOODS, INC., Defendant.

Civ. Action No. 96–11472–NG.

United States District Court,
D. Massachusetts.

Oct. 23, 1996.

Thomas V. Smurzynski, Ann L. Hammitte, Lahive & Cockfield, Boston, MA, for plaintiffs.

Arthur F. Dionne, Fishman, Dionne & Cantor, Windsor, CT, Mary R. Bonzagni, Law Offices of Donald S. Holland, Longmeadow, MA, Donald S. Holland, Richard H. Kosakowski, Holland & Bonzagni, P.C., Longmeadow, MA, for defendant.

### MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION

GERTNER, District Judge:

## I. INTRODUCTION

Plaintiffs The Stop & Shop Supermarket Co. ("Stop & Shop") and Fullerton Corporation ("Fullerton") move for a preliminary injunction in order to stop defendant Big Y Foods, Inc. ("Big Y") from violating plaintiffs' alleged trademark rights in the servicemark "IT'S THAT SIMPLE." That motion is **DENIED.**

While the slogan itself may indeed be simple, and the facts clear and for the most part uncontested, the legal issues are quite complex. Plaintiffs have not demonstrated the requisite "likelihood of success on the merits" needed to justify the issuance of a preliminary injunction: "IT'S THAT SIMPLE" is almost always used in conjunction with the strong servicemark Stop & Shop®, while Big Y's alleged infringement, the phrase, "WE MAKE LIFE SIMPLE," is always used in immediate proximity to its strong servicemark, Big Y®. Based on the record before me, I find that the plaintiffs have not demonstrated a sufficient likelihood of confusion to merit preliminary injunctive relief.

## II. FACTS

■ For some fourteen years, the well-known New England supermarket chain Stop & Shop has used as its signature phrase "IT'S TIME TO STOP & SHOP." Deciding that the time was ripe for a change, Stop & Shop opted to go with the new slogan "IT'S THAT SIMPLE." They first used the slogan in two television commercials (in the audio portion thereof) which ran in Hartford, Connecticut on February 4, 1996, and in Boston, Massachusetts and Providence, Rhode Island on March 3, 1996.[1]

■ Plaintiff's first documented use of "IT'S THAT SIMPLE" as a servicemark in advertising to the public, was on June 4,

1. The February and March uses of "IT'S THAT SIMPLE" do not qualify as trademark use. In these commercials, the use is as a description of Stop & Shop's Scan Saver card (which allows customers to get the benefits of using coupons without needing to bring the actual, clipped coupons into the store). The slogan did not then function as a protectable servicemark for Stop & Shop, but merely as a description of the ease of use of its Scan Saver card. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769, 112 S.Ct. 2753, 2757–58, 120 L.Ed.2d 615 (1992) ("Marks which are merely descriptive of a product are not inherently distinctive. When used to describe a product, they do not inherently identify a particular source, and hence cannot be protected."). Furthermore, these isolated uses

1996.[2]  On that date, Stop & Shop began an advertising campaign including radio, television and print advertisements, all using the slogan in proximity to the strong servicemark "STOP & SHOP®." Stop & Shop's trucks may eventually carry this servicemark inscribed after the STOP & SHOP® servicemark, as may all their shopping bags, and some billboards.

Complicating matters somewhat, plaintiff Fullerton owns the rights to the servicemark "IT'S THAT SIMPLE" in connection with providing "retail home improvement and hardware goods store services." Since Super Stop & Shop stores allegedly contain some home improvement products,[3] on March 18th, 1996, the two plaintiffs, Stop & Shop and Fullerton, executed a licensing agreement of the servicemark, with the express requirement that Stop & Shop use the ® symbol next to the slogan "IT'S THAT SIMPLE," so Fullerton's rights would be fully preserved.[4]

Together Fullerton and Stop & Shop claim that their alleged trademark rights in the servicemark "IT'S THAT SIMPLE" have been violated by Big Y, which on June 12, 1996, began using, in close proximity to the servicemark Big Y®, the servicemark "WE MAKE LIFE SIMPLE."

Defendant challenges the protectability of Stop & Shop's use of "IT'S THAT SIMPLE" with the "®" symbol next to it. It asserts that owing to Stop & Shop's allegedly improper usage of the federal Registered symbol, the plaintiffs should be prevented by the equitable doctrine of "unclean hands" from asserting federal trademark rights in using "IT'S THAT SIMPLE" as a servicemark for grocery stores.

In addition, Big Y contends that (1) "IT'S THAT SIMPLE" is merely descriptive, and lacked secondary meaning on June 12th when Big Y began using its "WE MAKE LIFE SIMPLE" mark; and (2), in the alternative, that "IT'S THAT SIMPLE" is a weak mark. In either case, defendant alleges, "IT'S THAT SIMPLE" does not deserve trademark protection. Finally, defendants argue that there is no likelihood of actionable confusion between the two marks in their current usages.

## III.  DISCUSSION

### A.  Preliminary Injunction Standard/Jurisdiction

The Preliminary Injunction standard requires a showing that (1) the plaintiff suffers irreparable injury absent injunction; (2) equitable balancing tips in favor of plaintiff when weighing the harm the injunction would do to defendants; (3) the likelihood of success on the merits; and (4) the public interest will not be adversely affected by granting the preliminary injunction. See, e.g. Camel Hair & Cashmere Institute of America, Inc. v. Assoc. Dry Goods Corp., 799 F.2d 6, 12 (1st Cir.1986).

In the context of trademarks, if the plaintiff is likely to prevail on the merits, two consequences follow: (1) there will be a very strong likelihood that plaintiffs will suffer irreparable injury absent an injunction, see Camel Hair, 799 F.2d at 14–15 (quoting Judge Friendly's influential opinion in Omega Importing Corp. v. Petri–Kine Camera, Co., Inc., 451 F.2d 1190, 1195 (2d Cir.1971)) (when likelihood of confusion shown, and plaintiff would thereby be likely to prevail, "injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows"); and (2) the preliminary injunction will be found to be beneficial to the public interest, "given the societal value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names...." Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 700 (1st Cir.

---

could not serve to create secondary meaning for this slogan. See id.

**2.**  Stop & Shop also used the slogan "IT'S THAT SIMPLE" on the inside cover of its annual report, but that cannot be said to be a use "in commerce," as required for trademark rights to accrue.

**3.**  These Super Stop & Shops are stores that sell many other products besides groceries, including gardening tools, some hardware supplies, and the like.

**4.**  Use of the "®" symbol next to "IT'S THAT SIMPLE" has been discontinued.

1987); *see also Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1015 (D.Mass.1988) ("Preventing consumer confusion is clearly in the public interest.").

Thus, in the trademark context perhaps more than others, the "heart of this test [for preliminary injunctions] is the second and third steps, which present the question whether the harm caused plaintiff without the injunction, *in light of* the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants." *Calamari Fisheries*, 698 F.Supp. at 1005 (noting that this applies "particularly in actions arising out of the Lanham Act"). For purposes of this motion, the Court will presume that if the plaintiffs can show a likelihood of success on the merits, they would suffer irreparable harm absent an injunction, and also that such an injunction would be in the public interest.

The relevant portion of the Lanham Act is 15 U.S.C. § 1125(a), which describes false representations in the trademark context, is as follows:

> Under this section, plaintiff is required to prove the following three elements to succeed in an infringement suit: (1) the ownership of a distinctive mark entitled to trademark protection; (2) the use of that name in interstate commerce; and (3) its use by another in a manner likely to cause confusion as to the origin of the goods or services.

*Calamari Fisheries*, 698 F.Supp. at 1006 (citation omitted).

The central question is the likelihood of confusion stemming from defendant's use of "WE MAKE LIFE SIMPLE." On this preliminary record, I will assume that plaintiffs own the servicemark "IT'S THAT SIMPLE" and that this servicemark is entitled to some protection against likely confusion by other servicemarks in similar or related services. Further, given the evidence, I will also assume that "IT'S THAT SIMPLE" was used

in interstate commerce, which suffices to provide this Court with subject matter jurisdiction under the Lanham Act, 15 U.S.C. §§ 1121, 1125(a). *See e.g. Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 838–39 (11th Cir.1983) (Lanham Act jurisdiction "reaches and is coincident with the constitutional boundary embodied in the commerce clause").

### B. *Likelihood of Confusion*

■ "[L]ikelihood of confusion is 'an essential element of a claim of trademark infringement,' whether it arises under state or federal law," *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir.1983) (quoting *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486–87 (1st Cir. 1981)). Since servicemarks (which "distinguish one's services from those offered by others") and trademarks are, for the most part, legally speaking, functional equivalents, "the distinction between the two types of marks is irrelevant ... [and] cases discussing either apply," *Boston Athletic Association v. Sullivan*, 867 F.2d 22, 23, n. 1 (1st Cir.1989). This Court will thus proceed with an analysis of the likelihood of confusion between the two servicemarks, Stop & Shop's "It's That Simple" and Big Y's "We Make Life Simple." [5]

■ In *Pignons*, the First Circuit established the following nonexhaustive list of factors to assess the "likelihood of confusion":

> the similarity of the marks; the similarity of the goods [or in this case, services]; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark.

657 F.2d at 487; *see also Astra*, 718 F.2d at 1205 (enumerating the *Pignons* test, noting

---

5. For the purposes of the present motion, this Court will assume that both slogans (or "tag lines," to use the industry argot) are servicemarks that "function to identify and distinguish." 2 McCARTHY ON TRADEMARKS § 19.29[1] at p. 137. Furthermore, to be protectable, a mark must "be used in such a way in advertising that 'it would be readily perceived as identifying such services.' " *Id.* at p. 138 (quoting *In re Moody's Investors Service, Inc.*, 13 U.S.P.Q.2d 2043, 2047 (TTAB 1989)). Both marks allegedly seek to identify these supermarkets' services.

these are "to be used as *guides* in assessing the likelihood of confusion" (emphasis added)); *Aktiebolaget Electrolux v. Armatron Int'l, Inc.,* 999 F.2d 1, 4 (1st Cir.1993) ("No one factor is conclusive as to likelihood of confusion, and the district court must consider each." (citation omitted)).

### C. *Similarity of the Marks*

■ The marks at issue seem similar: both short declarative phrases ending in the key word "simple." However, "similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *Pignons,* 657 at 487 (quoting *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440 (9th Cir.1980)).

The *Pignons* court stressed:

We and other courts have indicated that in certain circumstances, otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer.

657 F.2d at 487 (citing cases, including *R.G. Barry Corp. v. A. Sandler Co.,* 406 F.2d 114, 116 (1st Cir.1969)) (finding conjunction of housemark with contested trademark to be of "exceptional significance"); *Astra Pharmaceutical,* 718 F.2d at 1205 ("It is well settled that under certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer."). The First Circuit has held that "similarity is diluted by the frequent use of appellant's logos...." *Aktiebolaget Electrolux,* 999 F.2d at 3.[6]

■ Furthermore, similarity is not an isolated concept, to be observed in a vacuum where the two potentially similar marks are looked at side by side and the likelihood of

confusion assessed; rather, courts should consider the totality of the circumstances surrounding the use of the marks: "Similarity of the marks must be considered in light of what occurs in the marketplace, taking into account the 'circumstances surrounding the purchase of the goods' or services." *Calamari Fisheries,* 698 F.Supp. at 1009 (quoting *Alpha Industries,* 616 F.2d at 444).

Plaintiffs' have the burden of demonstrating that because the two marks evaluated in the context of their use are so similar in "total effect," it is likely that either (1) some consumers upon seeing Stop & Shop's voluminous advertising, rife with references to its housemark Stop & Shop, will be so confused as to go to Big Y supermarkets to do their shopping there; or (2) consumers will be confused into thinking that Big Y's supermarkets and (their promotions therefor) are somehow related to Stop & Shop's.

The impact of (a) Stop & Shop's use of "IT'S THAT SIMPLE" under all the circumstances as compared to (b) Big Y's use of "WE MAKE LIFE SIMPLE," is clear: With almost no exceptions, Stop & Shop uses "IT'S THAT SIMPLE" in close proximity to its decidedly strong servicemark "STOP & SHOP®." Similarly, Big Y always uses "WE MAKE LIFE SIMPLE" adjacent to "BIG Y®." In light of these circumstances, the two marks are not likely to be confused. Taking into account "the 'total effect' of the mark, considering sight, sound, and meaning," *Copy Cop, Inc. v. Task Printing, Inc.,* 908 F.Supp. 37, 44 (D.Mass.1995) (citations omitted), the plaintiffs have not met their burden of showing the likelihood of confusion between the two marks. This factor weighs strongly (and dispositively) in favor of defendant.

---

**6.** These cases usually involve individual products, and not services. But nothing in the language of *Pignons, R.G. Barry Corp., Astra Pharmaceutical,* or *Aktiebolaget Electrolux,* precludes application of this general and time-tested principle to services such as those provided by supermarkets. *See Union Oyster House v. Hi Ho Oyster House,* 316 Mass. 543, 544–45, 55 N.E.2d 942 (1944) ("when, through accustomed use in association with a ... product and by common understanding in the market, words forming part of

the language have come to mean, if used alone, [that] ... product, a competitor may nevertheless use them, if he accompanies their use with something which will adequately show that the ... [other] product is not meant.").

The touchstone is consumer confusion; this Circuit has consistently held that the likelihood of confusion is significantly lessened when otherwise similar marks are presented to the public in conjunction with strong and recognizable housemarks. I agree.

## D. Similarity of the Services

For all intents and purposes, the two services provided by the parties are identical: both provide retail groceries and produce to consumers. This factor weighs in favor of plaintiffs.

## E. Channels of Trade/Advertising/Marketing

"The overlap between the parties' trade channels, advertisers, and markets are three factors conventionally analyzed together." *Copy Cop*, 908 F.Supp. at 45. Here, again, there can be no serious dispute that both parties are direct competitors in the same trade; they utilize exceedingly similar forms of advertising, and they compete for the same class of prospective purchasers. These factors all cut in favor of the plaintiffs.

## F. Actual Confusion

Plaintiffs have not brought forward any evidence of actual confusion, but this is understandable given the fact that this action was brought at the start of its advertising campaign; therefore this factor favors neither party. It is worth noting, however, that: "Actual confusion is often taken to be the most persuasive possible evidence that there is a likelihood of confusion." *Id.* (citation omitted).

## G. Defendant's Intent in Adopting Its Mark

Plaintiffs admit that at this point in the litigation they have no evidence of Big Y's intent *vel non* to adopt its mark.

7. Marks can become stronger when they acquire secondary meaning. *See Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 2757–58, 120 L.Ed.2d 615 (1992) ("descriptive marks may acquire the distinctiveness which will allow them to be protected under the [Lanham] Act."); *see also DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 606–07 (1st Cir.1992) ("insofar as the public takes the word, or sign, to refer to a product or service with a particular source ... the word, or sign, has 'secondary meaning.'"). Arbitrary, fanciful and suggestive marks are "inherently distinctive" and need not have acquired secondary meaning to be protectable. *See* 2 McCARTHY ON TRADEMARKS, § 11.02 at pp. 8–9. Marks which fall into these categories are considered to be presumptively strong marks. Descriptive marks require secondary meaning to be demonstrated before they can be considered strong. As one court has succinctly summarized,

## H. The Strength of the Mark

In trademark law there is a spectrum of categories into which any mark involving words may fall, "in their ascending order of eligibility for protection ... are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary and fanciful." *S.S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 696 (1st Cir.1979). Generic marks are entitled to the least protection (if any), while arbitrary and fanciful marks, such as Kodak or Polaroid, and suggestive marks, like American Express or Visa, are entitled to the most protection against infringement. On this record, this factor does not support the plaintiffs. Stop & Shop has not presented enough evidence to satisfy this Court that "IT'S THAT SIMPLE" is a strong mark at this time.[7] Strength of a given mark "is ordinarily measured by such factors as: the length of time a mark has been used; the plaintiff's relative renown in its field; the plaintiff's vigilance in promoting its mark; the number of similarly registered marks in the field; and the success of other firms in registering similar marks." *Copy Cop*, 908 F.Supp. at 46 (citation omitted).

In terms of length of time, Stop & Shop had been actively using "IT'S THAT SIMPLE" for approximately one week (June of 1996) before Big Y began using "WE MAKE LIFE SIMPLE."[8] Stop & Shop is well known in the relevant New England region in the field of supermarkets. But given its

"a secondary meaning exists when in addition to their literal, or dictionary meaning, words connote to the public a product *from a unique source.*" *Charcoal Steak House v. Staley*, 263 N.C. 199, 202, 139 S.E.2d 185 (1964).

8. This is not to suggest that Stop & Shop had never used "It's That Simple" before June of 1996. It did. The use of "It's That Simple" in the television commercials in February and March was as a slogan to describe it's Scan Saver card. For example: "The Scan Saver card from Stop & Shop. It's that simple." These uses of "It's That Simple" cannot be said to be as a servicemark to denote Stop & Shop's services in general (as it is currently being used). Nor can the use of "It's That Simple" in Stop & Shop's annual report qualify as a use "in commerce."

**126**

relative simplicity, and the large number of food providers who use some variant of the word "simple" to describe their services or goods, that single week was not long enough to make "IT'S THAT SIMPLE" a strong servicemark to denote Stop & Shop's services. Unless Stop & Shop can provide evidence sufficient to convince this Court that "IT'S THAT SIMPLE" is suggestive, and therefore inherently strong even without secondary meaning, I must conclude at this time that Stop & Shop did not generate enough secondary meaning in the course of one week (June 4–11, 1996) to make "IT'S THAT SIMPLE" a strong servicemark.

Stop & Shop did acquire the rights to use this slogan from its co-plaintiff Fullerton, which had registered the mark in the context of providing "retail home improvement and hardware goods store services." But this does not help Stop & Shop in the context of this litigation. Whatever rights were conferred on Stop & Shop by Fullerton, they do not include any priority right to a federally registered servicemark for supermarket services for the slogan "IT'S THAT SIMPLE." The record does not contain any instances of this mark having been used in this region by Fullerton. Nor does the record show that the mark has been used (other than by Stop & Shop and Big Y) in this area in the context of providing supermarket services.

In sum, at this time, for the purposes of assessing likelihood of confusion, the Court finds that based on the record, "IT'S THAT SIMPLE" is not a strong servicemark, thereby lessening further any likelihood of confusion.

## IV. CONCLUSION

Given my determination that plaintiffs' are not likely to prevail on the merits, the motion for a preliminary injunction is hereby **DENIED**.

**SO ORDERED.**