Cratsley, John C., J.
The plaintiff, Rise Club, Inc. (“Rise Club” or “the plaintiff’), brought this action for equitable relief and money damages against the defendant, Gerber Group Limited Partnership (“Gerber” or “the defendant”) for federal and state trademark infringement (Counts I and IV, respectively), federal and state trademark dilution (Counts II and V, respectively), federal and state unfair competition (Counts III and VI, respectively), and state unfair and deceptive trademark practices (Count VII). Pursuant to Mass.R.Civ.P. 56, both defendant and plaintiff have now moved for summary judgment on all claims asserting that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.
The defendant has moved for Summary Judgment pursuant to Mass.R.Civ.P. 56. The plaintiff responded with a Cross Motion for Summary Judgment. Gerber contends there is no genuine issue as to material fact relating to its liability in this matter and is entitled to judgment as a matter of law because the Defendant’s use of its mark “RISE” did not cause a likelihood of confusion between its Biloxi operation and Rise Club’s Boston operation. Rise Club contends there is no genuine issue as to material fact relating to its trademark infringement claim and is entitled to judgment as a matter of law because it has established (1) use and therefore ownership of the mark RISE; (2) use by defendant of the same mark or a similar one; and (3) likelihood that defendant’s use will confuse the public. For the reasons stated below, the Gerber’s motion for summary judgment is ALLOWED and Rise Club’s motion for summary judgment is DENIED.
BACKGROUND
The following facts are taken from the summary judgment record.
Rise Club is a Massachusetts corporation whose principal place of business is 306 Stuart Street, Boston, Massachusetts, 02116. Compl. par. 1. Rise Club owns three federal marks and one state mark. Compl. pars. 6-8. The federal marks are under the “(a]fterhours night club” class of services and the state mark is under the “dance club” class of services. Id. The Plaintiffs first federal mark, Reg. No. 2,582,237, is a “stylized, side-ways ‘R’ surrounded by two concentric circles.” The Plaintiffs second federal mark, Reg. No. 2,582,239, is the word “RISE.” The Plaintiffs third federal mark, Reg. No. 2,600,809, is “the word RISE and stylized, side-ways ‘R’ surrounded by two concentric circles.” Exhibit 3 (records of the U.S. Patent and Trademark Office). Finally, the Plaintiffs state mark, Reg. No. 60,212, is “the word RISE and stylized, side-ways ‘R’ surrounded by two concentric circles.” Exhibit 4 (records of the Secretary of the Commonwealth). For the purpose of this decision, the term “Plaintiffs mark RISE” refers collectively to the four marks.
Rise Club, Inc. owns and operates a members-only after-hours club called RISE located at 306 Stuart Street, Boston, Massachusetts, 02116. Compl. pars. 1,9. Although plaintiff denies that RISE is “not open to the public” they admit that language on their website states, “(t]o become a member of RISE, you must be sponsored by an existing member who knows you.” http://www.riseclub.us. Inside RISE, the plaintiff provides lounge seating, dance floors, and international DJs. Rise Club executed contracts with international DJs from “Amsterdam, Barcelona, Belgium, Berlin, Glasgow, Greece, Italy, London, Madrid, Melbourne, Montreal, the Netherlands, Portugal, Quebec *572 City, Tokyo, Toronto, and Vancouver.” Beaulieu Aff. at par. 12.
The defendant is a New York limited partnership with a principal place of business located at 145 East 57th Street, New York, New York, 10022. Compl. par. 2. The defendant owns and operates a bar and lounge located in Boston known as Whiskey Park. Gerber Aff. at par. 2. In 2007, the defendant opened a lounge with restaurant and bar services called “Rise Lounge” located in the Hard Rock Hotel and Casino in Biloxi, Mississippi pursuant to a management agreement with the Hard Rock Hotel. Gerber Aff. at par. 3. The defendant’s sole federal mark is “a non-stylized mark ‘Rise Lounge’ without any claim to particular font, size, style or color” and is under the “restaurant -and bar services in class 43.” Gerber Aff. at par. 10. The Hard Rock Hotel terminated this management agreement in June of 2009 for failure to meet the profit expectations set out in the agreement. Gerber Aff. at par. 7. Pursuant to the Stipulated Consent Order dated July 22, 2009 and entered as an Order of the Superior Court on October 10, 2009 Nunc Pro Tunc, the defendant gave up its right to the name Rise because it no longer had use for it. Gerber Aff. at par. 8.
Thomas Beaulieu, Rise Club’s co-owner, received two emails from different patrons congratulating him on the Plaintiffs “new club in Biloxi.” E-mail dated April 21, 2008 from Caleb Bacon and e-mail dated April 29, 2008 from David Peters, Rise Club’s Statement of Material Facts, Exhibits. 21 & 22. The “confused patrons” were promptly notified that “Rise Lounge” in Biloxi was not associated with Plaintiffs “Rise Club” in Boston. Morda Trans, at pgs. 28-30.
DISCUSSION
I. Standard of Review
Under Massachusetts statutory and case law, summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of triable issues. Pederson v. Time, Inc., 404 Mass. 14, 17(1989). A party moving for summary judgment who would not bear the burden of proof at trial may demonstrate the absence of triable issues by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
II. Count I & Count IV: Federal and State Trademark Infringement
Rise Club alleges that Gerber’s use of the mark RISE was likely to cause confusion in the public’s mind as to the actual source of Gerber’s services and that the public was likely to believe that Gerber’s services are connected with or related to Rise Club. Compl. pars. 34-35. As a result of Gerber’s alleged acts, Rise Club claims it has suffered, and continues to suffer, substantial damages and irreparable injury. Compl. pars. 36. In order to prevail in a state trademark infringement action, plaintiff must establish: “use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.” M.G.L'.ch. 110H, §12(1). This Court, like both parties, will limit its analysis to trademark infringement under federal law, as the eight-part likelihood of confusion test will sufficiently cover the analysis under state and federal law. In order to prevail in a federal trademark infringement action, the plaintiff must establish “1) thathe uses, and thereby ‘owns,’ a mark, 2) that the defendant is using that same or a similar mark, and 3) that the defendant’s use is likely to confuse the public, thereby harming the plaintiff.” Star Financial Services, Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 9 (1st Cir. 1996) (citation and internal quotation marks omitted). Gerber alleges that Rise Club failed to prove that Gerber’s use of Rise Club’s mark “Rise” caused a likelihood of confusion between Gerber’s Biloxi operation and Rise Club’s Boston operation. Memorandum in Support of Defendant Gerber Group’s Motion for Summary Judgment, p. 6. The “likelihood of confusion” test is an essential element of a trademark infringement action. Star Financial Services, Inc. at 10. The First Circuit requires evidence of a “substantial” likelihood of a confusion and typically refers to eight factors in making the assessment:
(1) the similarity of the marks; (2) the similarity of the goods [or services); (3) the relationship between the parties’ channels of trade; (4) the relationship between the parties’ advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant’s intent in adopting the mark; (8) the strength of the plaintiffs mark.
Id. Although none of the above factors is controlling, each factor must be considered when making a determination of substantial likelihood of confusion. Id.
A. Similarity of the Marks
The common thread of the two marks at issue here is the word “Rise.” Similarity is determined based on the designation’s total effect. Northern Light Technology v. Northern Lights Club, 97 F.Sup.2d 96, 110 (D.Mass. 2000). Despite the common use of the word “Rise” in each party’s mark, the total effect of the two marks does not create a likelihood of confusion. See Northern Light Technology, 97F.Sup.2d 110. The word “Rise” is included in both plaintiff and defendant’s mark, however, the defendant’s mark includes the word “lounge” and is non-stylized without claim to any *573 font, size, or color. In contrast, the plaintiffs federal marks are siylized and include the word “RISE,” a stylized letter “R” encased in a circle, and a combination of the two above-described word and circle designs.
Further, marks that are otherwise similar, are not likely to be confused with one another if they are often used in “conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer.” International Ass’n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 204 (1st Cir. 1996) (hereinafter “Winship Green"). Plaintiffs mark appears alone without any accompanying information to identify the Plaintiff as the owner of the mark, whereas the Defendant’s mark often appeared in conjunction with its corporate parent, the Gerber Group. See Aff. of Scott Gerber, par. 8. Thus, even though the marks are similar, the fact that the mark often appears in conjunction with “Gerber Group” decreases the likelihood of confusion. See Winship Green, 103 F.3d 204.
Even where the marks are identical and the goods very similar, “infringement does not exist . . . when the evidence indicates no [likelihood of confusion].” Id. (internal quotations and citations omitted). Thus, while the marks may be similar, the stylistic distinctions between the plaintiffs and the defendant’s marks and the fact that the defendant’s mark is more often than not used in conjunction with the mark of “Gerber Group” mean to me that the total effect of the marks does not create a likelihood of confusion.
B.Similarity of the Goods or Services
Although both parties are in the entertainment industry, aside from this, their services are sufficiently dissimilar to avoid a likelihood of confusion in the minds of the public. Courts generally require a strong showing under this prong to find similarity of goods. Hasbro, Inc. v. Clue Computing, Inc., 66 F.Sup.2d 117, 123 (D.Mass. 1999); Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). In Pignons, the First Circuit “found two products dissimilar even though both were cameras because ‘[tjheir appearances are strikingly different so much so that one could not be mistaken for the other.’ ” Hasbro, Inc., 66 F.Sup.2d 123 (citing Pignons, 657 F.2d at 487). In this case, the plaintiff operates a private, members-only club located in the top floors of a building above a pizza and sub shop, whereas the defendant operated a public bar and restaurant located on the penthouse level of the Hard Rock Hotel and Casino in Biloxi, Mississippi. The appearances of the two businesses are so dissimilar, as in Pignons, that Rise Club in Boston could not reasonably be mistaken for Rise Lounge in Biloxi, Mississippi. See Pignons, 657 F.2d at 487.
C.Relationship Between the Parties’ Channels of Trade
D.Relationship Between the Parties’ Advertising
E.Classes of Prospective Purchasers
The above three factors are interrelated and are typically considered as a group. Star Financial Services, Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 10 (1st Cir. 1996). Since the parties’ businesses are located over 1,200 miles apart from one another, the issue of distance is highly relevant to the analysis under the above factors. Great distance between the two businesses is a factor to consider but it is not necessarily dispositive if other factors create a likelihood of confusion. In Stork Restaurant v. Sahati, the Ninth Circuit held that a new bar in San Francisco, CA infringed on the mark of the Stork Club of New York, NY, due mainly to the New York Stork Club’s nationwide reputation. Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir. 1948). The Seventh Circuit also considered this issue in Tisch Hotels, Inc. v. Americana Inn, Inc., where it found that geographic distance between the two parties was not dispositive, especially in the context of a business, like a hotel, which, by its very nature, “attract[s] the traveling public.” Tisch Hotels, 350 F.2d at 613. Therefore, a plaintiff with a geographically distant mark from the alleged infringer must establish a level of notoriety that can overcome the unlikelihood of confusion between two businesses located such a great distance apart. See Stork Restaurant 166 F.2d 348; Tisch Hotels, 350 F.2d at 613.
As support for this level of notoriety the plaintiff presented an affidavit from Thomas Beaulieu stating that patrons come from “as far away as France,” an article in The Boston Herald referring to Rise Club’s “national prestige,” and finally, an article in the Club Systems International which cites to Rise Club’s hours of operation as an attraction for international talent. Although this evidence might support a finding that the plaintiff was recognized in various entertainment circles, this does not rise in my opinion to the strong level of reputation and extensive advertising as seen in Stork and Tisch, thereby warranting the plaintiff protection in a distant market. See Stork, 166 F.2d 348; Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir. 1965).
I also find that the disparities in the parties’ advertising budgets, methods of advertising, and classes of prospective purchasers do not support a finding of likelihood of confusion. Even with the ability of an advertisement to reach a national or international audience with Internet advertising, the parties have distinctly different classes of prospective patrons. The plaintiffs allege that, “prospective patrons may choose to forego a trip to Boston if they believe they can visit plaintiff in Biloxi, or if they travel to Boston, may choose to forego visiting plaintiff, thinking they can do so in Biloxi.” There is, however, no evidence in the *574 summary judgment record to support this argument. Further, it is my opinion that no reasonable juror would find this argument persuasive based on the lack of evidence to support it. ;
F.Evidence of Actual Confusion
Although even a minimal demonstration of actual confusion can be enough to support likelihood of confusion, two e-mails submitted by the plaintiff demonstrating initial confusion do not constitute the level of actual confusion necessary to support a finding of likelihood of confusion. In Hasbro, Inc. v. Clue Computing, Inc., the court was faced with similarly minimal instances of actual confusion and found that up to three instances of actual confusion over a four-year period was not enough to rise to the level of actual confusion necessary. Hasbro, Inc., 66 F.Sup.2d at 124 (D.Mass. 1999). Actual confusion has been found upon a showing of much more significant evidence than that presented by the plaintiff. See Calamari Fisheries v. The Village Catch, Inc., 698 F.Sup. 994, 1003-05 (D.Mass. 1998) (finding actual confusion where the plaintiff presented a newspaper article that confused plaintiffs and defendant’s restaurants and numerous affidavits from staff members and patrons, one of whom visited the defendant’s restaurant 5 times before realizing that it was not affiliated with the plaintiffs restaurant).
Even if two e-mails suggests the level of actual confusion needed to satisfy this prong of the trademark infringement test, merely initial confusion with no effect on the ultimate decision of a patron is an insufficient basis for a trademark infringement claim. Astra Pharmaceuticals, 718 F.2d at 1207. In my view, consistent with the case law, two e-mails demonstrating initial confusion from prospective patrons of the plaintiffs business that did not ultimately have an effect on that patron’s decision of which club to visit do not amount to the actual confusion required to support a likelihood of con fusion finding. See id.
G.Defendant’s Intent in Adopting the Mark
The plaintiff has not presented any credible evidence at this summary judgment stage to suggest that the defendant intended to create confusion in the public’s mind about the origin of the defendant’s services. See Hasbro, Inc., 66 F.Sup.2d at 125. Mere knowledge of the existence of the plaintiffs mark does not mean that the defendant intended to benefit from or infringe upon plaintiffs mark “Rise.” See id. Further, while intent is an important consideration in the trademark infringement analysis, in Lund the First Circuit noted “courts should not give great weight to a finding of lack of intent in determining likelihood of confusion because the presence or absence of intent does not impact the perception of consumers whose potential confusion is at issue.” See IP Lund Trading ApS v. Kohler Co., 163 F.3d 27, 44 (1st Cir. 1998). The plaintiff attempts to show that the defendant had knowledge of plaintiffs mark because (1) its original submission (“Rize”) to the United States Patent and Trademark Office (USPTO) was rejected due to likelihood of confusion with plaintiffs mark; (2) one of the defendant’s properties, Whiskey Park, is located in Boston; and (3) “at least” one of plaintiffs employees left Rise Club to work for defendant at Whiskey Park. Aside from deposition evidence that supports the fact that Scott Gerber was aware that another entity was using the mark RISE, the plaintiff has offered no evidentiaiy support for the other contentions above. Although not agreed upon by the parties, but basically unrebutted, it is relevant to note that the defendant states the name “Rise Lounge” was chosen based on a company-wide contest to choose a name. A finding of intent cannot be supported here where the idea for the name came from a contest-like process. Therefore, the evidence presented by the plaintiff does not support or even suggest a finding that the defendant intended to benefit from or infringe upon the plaintiffs mark.
H.Strength of the Plaintiffs Mark
In determining the strength of a mark, the court must consider, “evidence of the length of time the mark has been used, its renown in the plaintiffs field of business, and the plaintiffs actions to promote the mark.” Star Financial Services, Inc., 89 F.3d at 11. Here, evidence that the Plaintiff has been in operation for 9 years is significant to the strength of Plaintiffs mark. Evidence of the plaintiffs national reputation would be probative as well, but the actual evidence presented at summary judgment by the Plaintiff[1] does not substantiate its claim that “(p)raise for plaintiffs club is everywhere.” Recognition in a newspaper targeted to the local Boston market and mention of the Plaintiffs “sense of community” in a trade journal do not rise in my opinion to the level of being “renown” in the plaintiffs field of business. Finally, the plaintiffs actions to promote its mark include plaintiffs efforts to advertise and efforts to protect its mark by successfully enforcing its mark in state and federal court. The evidence suggests that the plaintiff has spent a little over $100,000.00 on advertising in the last 9 years and that these advertising efforts were limited to plaintiffs website, event posters, and event flyers. With respect to the mark’s enforcement in state and federal court, I give little weight to the three cases cited by the plaintiff because in each case, the defendant agreed to discontinue use of plaintiffs mark “Rise,” which is precisely what the defendant has done in this case. While these facts about enforcement do weigh in the plaintiffs favor, the strength of the plaintiffs mark is not decisive standing alone in a trademark infringement inquiry. See Hasbro, Inc., 66 F.Sup.2d at 126.
The important inquiry at summary judgment in a trademark infringement action is whether the plaintiff has presented material evidence in support of a realistic likelihood of confusion. See id. Here, while the plaintiff has presented evidence of similarity of the marks and strength of its mark, it has failed on all the *575 other tests to present evidence to support intent to create confusion, common channels of trade and advertising, common prospective purchasers, and the critical categories of similarity of products and actual confusion. Ultimately, Rise Club has failed to demonstrate, as a matter of law, a likelihood that patrons confused Gerber Group’s Rise Lounge with Rise Club in Boston.
Therefore, since the plaintiff, Rise Club, failed to present any genuine issues of material fact on the critical issues for federal and state trademark infringement, the defendant, Gerber Group, is entitled to summary judgment as a matter of law.
III.Count II & Count V: Federal and State Trademark Dilution
Pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c) and M.G.L.c. 1I0H, §13, plaintiffs moved for injunctive relief based on the contention that the defendant’s unauthorized use of the plaintiffs mark would lessen and dilute the distinctive quality of plaintiffs mark. However, on July 22, 2009, the parties entered a Stipulated Consent Order wherein the plaintiff withdrew its Motion for Preliminary Injunction and the defendant discontinued use of the mark RISE. This Court also finds it relevant that neither party included either the state or federal claims in their briefs. Dilution claims require extensive analysis of their own and “are not intended to serve as mere fallback protection for trademark owners unable to prove trademark infringement.” I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 48 (1st Cir. 1998).
IV. Count III & VI: Federal and State Unfair Competition
Pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(a) and Massachusetts common law, the plaintiffs allege that that the defendants deliberately used the plaintiffs mark to take advantage of plaintiffs reputation and mislead the public. Based on the foregoing analysis under the likelihood of confusion test, these counts are moot because there was no infringement as a matter of law.
V. Count VII: State Unfair and Deceptive Trade Practices
The plaintiff also claims that the defendant’s alleged conduct violates G.L.c. 93A. There must be proof of an unfair or deceptive act for the plaintiffs c. 93A claim to succeed. See G.L.c. 93A. This Court finds that the defendant’s conduct does not violate c. 93A because the plaintiff has failed to allege any facts that support a c. 93A violation based on the cases that the plaintiff cites and the jurisprudence of the Commonwealth.
For the foregoing reasons, it is hereby ORDERED that the Defendant’s Motion for Summary Judgment is GRANTED and Plaintiffs Motion for Summary Judgment is DENIED.

An article in The Boston Herald, a newspaper that targets a local Boston market and discusses Plaintiffs reputation and ability to attract “the world’s hottest DJs” and an article in Club Systems International touting the Plaintiffs “genuine sense of community.”